Joseph Arthur Roberts, State Bar No. 156180
LAW OFFICE OF J. ARTHUR ROBERTS
3345 Newport Blvd., Suite 213
Newport Beach, CA 92663
Telephone: (949) 675-9900
Facsimile: (888) 989-9309
Email: Joe@JarLegal.com

Attorney for Plaintiffs,
ERNEST MICHAEL BAKENIE,
individually, and all others
similarly situated

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST MICHAEL BAKENIE, on behalf of himself and all others similarly situated,<br><br>              Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.; and DOES 1 through 10, inclusive,<br>              Defendants. | CASE NO.   SACV12 - 0060 JVS (MLGx)<br><br>Assigned to the Honorable:<br><br><br>**CLASS ACTION COMPLAINT**<br>  1. Unlawful/Unfair Acts §17200<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff ERNEST MICHAEL BAKENIE (referred to as "Bakenie "), by and

through his attorney of record, brings this action against defendants JPMORGAN

CHASE BANK, N.A. (Hereinafter "CHASE") and DOES 1 through 10, inclusive,

1

**CLASS ACTION COMPLAINT**
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

inclusive ("Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiff:

## I.   **VENUE**

1.   The Court has subject matter jurisdiction over this action under 28 USC § 1331 wherein the action arises under the Constitution, laws or treaties of the United States and/or under 28 USC § 1332 wherein this is a class action over $10,000,000.00 where at least one plaintiff is diverse from one defendant.

2.   The Court has personal jurisdiction over the defendants in this action by the fact that the Defendants are conducting business in the state of California.

3.   Venue is proper in this Court pursuant to 28 USC § 1392 because the action involves real property located in the Central District of California; and pursuant to 28 USC § 1391(b) and a substantial part of the events or omissions on which the claims are based occurred in this District.

2

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

## II.   **PARTIES**

4.      Plaintiff, ERNEST MICHAEL BAKENIE, at all times mentioned herein relevant to the complaint is the owner of real property commonly known as 1617 West Balboa Blvd., Newport Beach CA  92663 (the "Property").

5.      Defendant, JPMORGAN CHASE N.A. ("CHASE") is a national banking association organized and existing under the laws of the United States, with its principal banking association organized and existing under the laws of the United States, headquartered in the State of New York and doing business in the State of California.

6.      Plaintiffs do not know the true names and capacities of the defendants DOES 1 through 10, inclusive, and, as such, names said defendants by such fictitious names.  Plaintiffs will amend the complaint to state the true name and capacity of the DOE defendant(s) when such information is ascertained.

7.      Plaintiffs are informed and believe, and allege thereon, that each defendant is responsible in some manner for the occurrences alleged in the complaint, and that plaintiffs' damages were proximately caused by the defendants at all times mentioned in the complaint.

8.      Plaintiffs are further informed and believe, and allege thereon, that each defendant was the agent, servant, representative, and/or employee of their co-defendants, and in doing the things hereinafter alleged were acting in the scope of

3

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

their authority as agents, servants, representatives, family members and/or employees, and with the permission and consent of their co-defendants.

9.     Additionally, plaintiffs are informed and believe, and allege thereon, that each defendant assisted, aided and abetted, adopted, ratified, approved, or condoned the actions of every other defendant and that each corporate defendant, if any, was acting as the alter ego of the other in the acts alleged herein.

## III.   GENERAL FACTUAL ALLEGATIONS

10.     Plaintiff is informed and believes and alleges thereon that defendant CHASE is engaged in the business practice of deceiving bankruptcy judges, Chapter 7 trustees, Chapter 11 trustees, Chapter 13 Trustees, the Office of the United States Trustee, creditors, creditor attorneys, debtors in possession, debtors and debtors attorneys ("bankruptcy players") as to CHASE'S status a secured creditor in tens of thousands of bankruptcy cases filed nationwide.

11.     Through the use of fabricated assignments, endorsements and affidavits that purport to transfer Deeds of Trust, notes and the rights to all monies due under the terms of tens of thousands of non-negotiable promissory notes (the "MLNs"); CHASE has demonstrated a pattern and practice of playing "hide-and-seek" with debtors, judges and other bankruptcy players.

4

**CLASS ACTION COMPLAINT**
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

12.     CHASE intentionally conceals the identity of the true parties in interest entitled to enforce the terms of tens of thousands of residential non-negotiable promissory notes (the "MLNs") for its own financial benefit, at the expense of the class and to the detriment of the integrity of the bankruptcy system.

13.     That CHASE is in the business of owning and\or servicing tens of thousands of residential home loans.  Many of which have been pledged to Mortgage backed security trusts.

14.     That CHASE acquired the assets of WASHINGTON MUTUAL BANK, N.A. ("Hereinafter, "WAMU") from the FDIC after WAMU failed and was placed into receivership.

15.     These assets included portfolio loans owned by WAMU and servicing rights of loans that were originated by WAMU and its subsidiaries but pledged or transferred to mortgage backed security trusts before WAMU's failure.

16.     That these MLNs are each non-negotiable instruments.

17.     That after a defaulted borrower files for relief under a chapter of the U.S. Bankruptcy Code: CHASE retains local attorneys ("network attorneys") and appears in thousands of bankruptcy matters as a creditor.

18.     Within each case, the network attorneys are charged with various functions depending on the chapter filed and the facts of each case.  That in each

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

bankruptcy matter, CHASE and its agents has the burden of establishing standing to obtain the desired relief, remedy or claim.

19.     On behalf of CHASE, the network attorneys file proofs of claims, objections to confirmation of proposed plans, other services and most commonly, Motions for Relief from the Automatic Stay (hereinafter, the "bankruptcy matters").

20.     Since 15 USC §1641g was enacted in 2009, CHASE, its subsidiaries principals and agents (Hereinafter, "CHASE et al.") have filed no less than 7,000 Motions for Relief of Stay and hundreds of Proofs of Claims in the Central District of California, wherein they falsely claim to be the party entitled to monies due under the terms of MLNs.

21.     Said network attorneys are financially rewarded by CHASE et al., based on the speed in which the network attorneys obtain Orders from Relief of Stay and complete other bankruptcy matters.  Said network attorneys incur a performance penalty based on the amount of correspondence with CHASE et al. and the amount of evidence the attorney's require "prove-up" and completing bankruptcy matters.

22.     That DOE 1, an unidentified agent or vendor of CHASE, imposes "technology fees" on CHASE and the network attorneys for correspondence, access and copies of the documentary evidence required to "prove up" and complete bankruptcy matters.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

23.     That the Pooling and Servicing Agreements of each private Mortgage Backed Security Trust  serviced by CHASE contemplates no less than THREE true sales of each MLN from originator, to sponsor, to depositor and finally to the designated Trustee of the MBST (the "Chain of Title").

24.     That the cost of properly transferring a single MLN to a MBST through the contemplated "Chain of Title" is approximately $1,500.00.  That a typical MBST contemplates a pool of 5,000 MLNs. That CHASE and its agents service loans for hundreds of MBSTs.

25.     That a valid "prove up" of standing in a bankruptcy matter that legitimately establishes that a MBST is the current beneficiary of a class member's MLN, requires evidence of each of the THREE true sales transactions contemplated in the Pooling and Servicing Agreement of any given MBST.

26.     That CHASE, its agents and its principals frequently lack evidence of said multiple transfers required to establish legitimate standing in bankruptcy, particularly in the case of WAMU originated MLNs.

27.     That CHASE et al. intentionally refuses offer the actual evidence of the THREE MLN transfers because the "technology" cost, processing and legal fees associated with proving standing of the true "chain of title" of MLNs is too high given CHASE's volume of bankruptcy matters.

7

28.     That CHASE and its network attorneys are charged for access to each and every manufactured document needed to "prove up" the element of standing in the bankruptcy arena by DOE 1 through a complex web based interface platform.

29.     That said manufactured documents include, but are not limited to: Assignments of Deed of Trust, Corporate Assignments, Promissory Notes, Endorsements, Allonges, Acknowledgements and employee affidavits (hereinafter, the "inducing documents") executed under penalty of perjury.

30.     That the existence of these "technology fees" makes representing the truth of each class loan's true "chain of title" cost prohibitive given the scale of CHASE's national foreclosure and bankruptcy practice.

31.     That in many cases, including the WAMU MLNs, no evidence exists that class MLNs were EVER legally transferred from loan originator through the contemplated chain of title and to Mortgage Backed Security Trusts serviced by CHASE.

32.     Rather than incur the cost of "proving up" its own standing or the standing of its principal Mortgage Backed Security Trust, CHASE systemically misrepresents CHASE or a designated MBST to be a creditor in tens of thousands of bankruptcy cases by utilizing manufacture documents.

8

33. That said practice is utilized for all mortgage loans originated by CHASE, and other loan originators, including insolvent WASHIGTON MUTUAL BANK, whose assets were purchased by CHASE.

34. That said manufactured documents are fabrications intended to create the illusion of a valid transfers MLNs and support the assertion of standing in tens of thousands of bankruptcy cases

35. That CHASE does not transfer MLNs from a given MBST to itself for administrative convenience as contemplated in 15 USC §1641.

36. That the aforementioned fabricated evidence is "photo-shopped" and is HIGHLY PERSUASIVE and authentic in appearance so as to ensure legal victory in the bankruptcy courts.

37. That said manufactured evidence is systemically utilized to deceive bankruptcy players and increase the profits of CHASE, its agents and its principals through massive cost savings and the imposition of attorney fees upon class borrowers.

38. As a direct result of this practice, over 95% of CHASE's Motions for Relief of Stay and Proofs of Claim are granted without objection.

39. That the use of the fabricated evidence has a chilling effect on class debtors and their attorneys.  Said business practice discourages bankruptcy players

9

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

from offering objections or from questioning the validity of CHASE's false claims based on standing.

40.   In addition to cost savings of its practice, CHASE unjustifiably receives trustee payouts from confirmed plans based on submitted Proofs of Claim supported by fabricated evidence.  Said payouts are at the expense of unsecured creditors and debtors alike.

41.   That said practice creates the illusion that MLNs were properly transferred to MBSTs, thereby "dumping" the loss of a defaulted loan into a trust years after the loan was originally pledged to a trust.

42.   That said practice allows CHASE to dump defaulted loans that were never properly securitized by WAMU and other originators acquired by CHASE into private mortgage backed security trusts by creating the illusion of a valid transfer.

43.   Said practice shifts the liability of defaulted loans not properly securitized by WAMU, from CHASE to private mortgage backed security trusts.  The practice allows CHASE to effectively mitigate the millions of dollars in liability of the WAMU acquisition, where WAMU failed to transfer MLNs of its portfolio before its demise.  Said practice shifts losses from WAMU to MBST bond investors.

44.   That after a non-judicial foreclosure sale, class members remain indebted to the true beneficiary for the unsecured note but without credit for the loss of the collateral to CHASE's designated assignee.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

45.     Most egregiously, the network attorneys utilize the inducing documents to obtain attorney fees awards from by the bankruptcy judges ranging from $600-1000 for each successful motion for relief of stay.

46.     That said motions are granted and the hundreds of thousands in attorney fees are awarded under false pretenses.

47.     That CHASE charges bankruptcy attorney fees to members of the class thereby increasing their collective total balances and arrearage claims.

48.     Where a MLN is transferred after origination, Homeowners have a statutory right to know who the identity of the beneficiary of their MLNs pursuant to 15 USC §1641.

49.     That CHASE routinely ignores the requirements of 15 USC §1641 and systemically fails to provide the statutory notice with 30 days of each illusionary transfer.

50.     That class members and bankruptcy players have a right to court system that is free of deceit and false evidence.

51.     That the degradation of the integrity of our bankruptcy court system cannot be justified in the name of CHASE's cost savings and unjust enrichment.

52.     That justice will be served only where the fees awards, claims and orders granted by bankruptcy courts are disgorged and vacated.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

## IV.   **EVIDENCE ON DEMAND:  FALSE ASSERTIONS OF STANDING BY CHASE IN BAKENIE'S BANKRUPTCY MATTERS**

53. Plaintiff incorporates these allegations into the claim below as though fully set forth herein.

54. Plaintiff's only significant asset is his residence at 1617 West Balboa Blvd., Newport Beach CA  92663 (the "Property").

55. Plaintiff is informed and believes and based upon such information and belief alleges that on or about July 1, 2006, Plaintiff entered into a residential refinance loan with JPMORGAN CHASE BANK, N.A ("CHASE").

56. Plaintiff gave a Defendant CHASE a promissory note (the "Note") for $1,170,000.00 secured by a deed of trust to the Property (the "Deed of Trust").

57. That after origination, CHASE represented itself to Plaintiff to be the beneficiary and servicer of the subject MLN. As such, Plaintiff tendered monthly mortgage obligations to CHASE.

58. That following his loss of employment as a licensed real estate broker and a devastating motorcycle accident, Plaintiff defaulted on the loan, property taxes and a junior lien in early 2009.

59. That facing an imminent foreclosure sale, the Plaintiff filed a Chapter 7 voluntary petition on August 13, 2009 [Case number 8:09-bk-18443-TA].

12

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

60. That at no time prior to August 13, 2009 did Defendant CHASE represent to Plaintiff that his loan had been sold or that an assignment of the deed of trust had ever been recorded.

61. That on December 15, 2009 JP Morgan CHASE Bank, NA filed a Notice of Motion and Motion for Relief of the Automatic Stay (Hereinafter "Bakenie bankruptcy matter #1") regarding 1617 West Balboa Blvd. Newport Beach, CA. [EXHIBIT A-1].

62. That CHASE and its agents went to great length to create the illusion of standing in the Motion for Relief of the Automatic Stay through the use of a false declaration and a fabricated endorsement.

63. That the BAKENIE case is a typical example of the implementation of CHASE's business practice.

64. That CHASE's Motion for Relief of the Automatic Stay, which contained a fabricated endorsement and a false declaration executed under penalty of perjury, was offered so as to create the illusion that CHASE had standing as a party in interest.

65. That at no time during the pendency of this bankruptcy matter did Defendant CHASE represent to Plaintiff, the Court or the Chapter 7 Trustee that the loan had been sold or that an assignment of the deed of trust had ever been recorded.

13

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

66. That under penalty of perjury, Defendant CHASE through employee affidavit that it was the current owner of the subject note and deed of trust, a false statement.

67. That CHASE did not disclose any contractual servicer relationship with the CHASE Mortgage Finance Trust Series 2006-1, or mention in any way to the Court, Chapter 7 Trustee the United States Trustee or debtor's counsel that a transfer of the subject loan had occurred.

68. That CHASE went to great lengths to create the illusion that it owned the subject loan and therefore had standing to seek relief of the automatic stay as a party in interest, including the creation of a fabricated and "photo-shopped" endorsement with was attached to a copy of the original note and offered as evidence.

69. That in further support of its motion, CHASE attached a false "REAL PROPERTY DECLARATION" signed under penalty of perjury by Kimberly M. Horne on December 11, 2009 in Columbus Ohio which states: *"I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because: See Attachment 1."*

14

**CLASS ACTION COMPLAINT**
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

70. That Kimberly M. Horne's Declaration [EXHIBIT A-2] further misrepresents that: "*I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to the Plaintiff(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.*"

71. That Attachment 1 of the Kimberly M. Horne's Declaration falsely states: "*Movant is the current owner of the note and is entitled to enforce the provisions of the Note and Deed of Trust*".

72. That Kimberly M. Horne is as a known "robo-signer" who has signed thousands of false affidavits and documents submitted as evidence of standing in bankruptcy matters for the benefit and at the direction of CHASE et al.

15

CLASS ACTION COMPLAINT

***BAKENIE v JPMORGAN CHASE BANK, N.A.***

73. The fabricated endorsement was purportedly executed as payable in blank on August 25 2006 and allegedly executed by ANGELA NOLAN, Assistant Vice President of Chase Home Finance LLC. [EXHIBIT A-3].

74. That ANGELA NOLAN is not an Assistant Vice President of Chase Home Finance LLC and is a known "robo-signer" who has executed thousands of false affidavits and documents submitted as evidence of standing in bankruptcy matters for the benefit and at the direction of CHASE et al.

75. That on December 29, 2009, the designated Chapter 7 Trustee Richard Marshack, represented by Plaintiff's current counsel, filed an Adversary Proceeding against CHASE [Adversary case 8:09-ap-01814-Hereinafter, "Bakenie bankruptcy matter #2"], on behalf of the bankruptcy estate based upon violations of the Truth in Lending Act unrelated to the instant action and seeking rescission of the original transaction.

76. That Bakenie and the Chapter 7 Trustee relied on CHASE's false representation in bankruptcy matter #1, that CHASE owned the subject note when the trustee named the CHASE as the appropriate Defendant in the adversary proceeding.

77. That based on the false declarations made by CHASE agent Kimberly M. Horne, and over the objection of Bakenie and the Chapter 7 Trustee Richard Marshack, the Court entered an Order granting Chase's motion for relief of stay on January 19, 2009.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

78. That the subject Order was obtained under false pretenses. That the aforementioned fabricated documents and false declaration appeared authentic and convincing such that the Bankruptcy Court was induced into believing that CHASE was a party in interest and had standing in Bakenie's case.

79. That CHASE thereafter was awarded attorney fees in an amount less than $1,000.00 which was then charged to Bakenie's loan balance.

80. That after CHASE was sued in the adversary proceeding by the Chapter 7 Trustee, CHASE changed its position on February 26, 2010 and declared that U.S. BANK, N.A., as trustee for CHASE Mortgage Finance Trust Series 2006-1 was the owner of the subject loan pursuant to a previously undisclosed Assignment of Deed of Trust.

81. That CHASE filed a Motion to Dismiss the Adversary Proceeding wherein CHASE alleged that it was NOT the true owner of the note. *"An Assignment of Deed of Trust was recorded around July 28, 2009 with the Orange County Official Records as instrument number 20090004005371. The Assignment indicates that U.S. Bank, N.A. as trustee for CHASE Mortgage Finance Trust Series 2006-1 ("US Bank") was assigned beneficial interest under the DOT. See, RJN, Exhibit 4."*

82. That the referenced Assignment of Deed of Trust is a fabricated and "photo-shopped" document created to support the illusion that the CHASE Mortgage

17

**CLASS ACTION COMPLAINT**
***BAKENIE v JPMORGAN CHASE BANK, N.A.***

Finance Trust Series 2006-1 is the true party in interest and therefore standing to enforce the terms of the Bakenie MLN [EXHIBIT B].

83. That the Adversary Proceeding was amended by the Chapter 7 Trustee to grant the debtor standing and to add Bakenie as a Plaintiff to the matter.

84. That the Bankruptcy Court determined that even if estate's TILA claim was valid, the estate was unlikely to be able to "carve out" enough equity to justify liquidation of the property.

85. That Chapter 7 trustee and Bakenie stipulated to dismiss the Truth in Lending claims against both CHASE and for CHASE Mortgage Finance Trust Series 2006-1 without prejudice.

86. That the Trustee abandoned all claims to the Plaintiff and filed a no asset report on or about April 18, 2010.

87. That Bakenie then filed a Complaint in Federal Court alleging the same Truth in Lending violations, Debt collection claims and a Unlawful/Unfair Acts §17200 claim against CHASE and U.S. BANK, N.A., as trustee for CHASE Mortgage Finance Trust Series 2006-1.

88. That notwithstanding the Kimberly M. Horne's Declaration and the Angela Nolan endorsement, CHASE asserted that CHASE Mortgage Finance Trust Series 2006-1 by way of the aforementioned Assignment of Deed of Trust, exclusively.

18

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

89. That following a Motion to Dismiss Bakenie's First Amended case, the Court dismissed all claims except the Unlawful/Unfair Acts §17200 claim.

90. Prior to trial Bakenie and Defendants CHASE and for CHASE Mortgage Finance Trust Series 2006-1 stipulated to dismiss the remaining Unlawful/Unfair Acts §17200 claim without prejudice and to pursue a resolution outside of court.

91. That the matter was never settled.

92. That Bakenie filed a Complaint in Superior Court alleging claims including fraud and wrongful foreclosure on August 8, 2011.  That the Superior Court case is still pending.

## BACKGROUND FACTS ON Chase Mortgage Finance Trust Series 2006-1

93. Plaintiff incorporates these allegations into the claim below as though fully set forth herein.

94. Plaintiff is informed and believes and based upon such information and belief alleges that Chase Mortgage Finance Trust Series 2006-1 is a mortgaged-backed security trust and the issuing entity of approximately $1,079,241,000 in investment bond certificates.

95. Plaintiff is informed and believes and based upon such information and belief alleges that Defendant CHASE and its agents caused a prospectus supplement

19

and Pooling and Servicing Agreement (Hereinafter "PSA") to be filed in the

public record of the Securities and Exchange Commission on August 17, 2006,

[http://www.secinfo.com/d12atd.v53x.htm#n4x],

96. Plaintiff is informed and believes and based upon such information and belief

alleges that Chase Home Finance LLC is the designated "sponsor and seller" of

the Chase Mortgage Finance Trust Series 2006-1;  that Chase Mortgage Finance

Corporation designated "depositor" of the Chase Mortgage Finance Trust Series

2006-1.

97. Plaintiff is informed and believes and based upon such information and belief

alleges that Defendant CHASE is the designated "custodian" and "servicer" of

the Chase Mortgage Finance Trust Series 2006-1.

98. Plaintiff is informed and believes and based upon such information and belief

alleges that as custodian, CHASE is responsible for "Holding and maintaining

the Mortgage Loan documents related to the Mortgage Loans in a fire-resistant

facility intended for the safekeeping of mortgage loan files on behalf of the

Trustee."

99. That Chase Home Finance LLC, Chase Mortgage Finance Corporation and

Defendant CHASE are all affiliated.

100.    Plaintiff is informed and believes and based upon such information and

belief alleges that the "closing date" of the Chase Mortgage Finance Trust Series

20

2006-1 was August 22, 2006 and that the PSA contemplates and describes a three sale "chain of title" for each loan to be deposited into the corpus of the MBST.

101.    Plaintiff is informed and believes and based upon such information and belief alleges that the PSA of the Chase Mortgage Finance Trust Series 2006-1 contemplates and discloses that it shall purchase all loans from the Chase Mortgage Finance Corporation ("depositor") for consideration before the "closing date".

102.    Plaintiff is informed and believes and based upon such information and belief alleges that the PSA of the Chase Mortgage Finance Trust Series 2006-1 contemplates and discloses that the "depositor" shall purchase all loans from the Chase Home Finance LLC ("sponsor") for consideration before the "closing date".

103.    Plaintiff is informed and believes and based upon such information and belief alleges that the PSA of the Chase Mortgage Finance Trust Series 2006-1 contemplates and discloses that the "sponsor" shall purchase loans from the Defendant Chase ("originator") for consideration before the "closing date".

104.    That the MBST's PSA discloses a three step chain of title of each mortgage note contemplated for purchase as follows: originator Defendant CHASE sells each note to sponsor Chase Home Finance LLC, who sells each

21

note to depositor Chase Mortgage Finance Corporation, who sells each note to

U.S. National Bank, as trustee for the Chase Mortgage Finance Trust Series

2006-1, prior to the "closing date" of August 17, 2006.

105.     That CHASE failed to transfer the Bakenie MLN in the manner described

in the PSA.

106.     That the subject Assignment of Deed of Trust purports that the Bakenie

MLN was transferred directly from CHASE to Chase Mortgage Finance Trust

Series 2006-1 after it was defaulted and nearly THREE YEARS after the

"closing date".

107.     Plaintiff alleges that the Assignment of Deed of Trust is a false document

that misrepresents that the Bakenie MLN was transferred on the date and in the

direct manner described in the language of the document.

108.     That CHASE's intention in recording the Assignment of Deed of Trust is

to "dump" the loss of the Bakenie MLN into the Chase Mortgage Finance Trust

Series 2006-1through the use of the fabricated document.

109.     That while Plaintiff lacks standing to complain about CHASE's failure to

comply with the PSA, Bakenie has standing to complain about the effect of

CHASE's deceptive business practice on similarly situated class members.

**CLASS ACTION COMPLAINT**
***BAKENIE v JPMORGAN CHASE BANK, N.A.***

## V.   **CLASS ACTION ALLEGATIONS**

110.      Plaintiff incorporates the allegations above in this claim as though fully

set forth herein.

111.      CHASE is engaged in systemic fraud upon the Bankruptcy Courts, class

members and other bankruptcy players for financial gain.

112.      Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil

Procedure, on behalf of the themselves and on the following Classes:

(1) All California debtors, as defined under the U.S. Bankruptcy code,
in whose cases CHASE appeared and asserted standing as a creditor in
any bankruptcy matter BASED on false, inaccurate, misleading or
deceptive documents or written representations and where another
entity other than CHASE is the actual creditor of a MLN.

(2) Excluded from the Class are defendants, and their affiliates,
subsidiaries, current or former employees, officers, directors, agents,
representatives, and their family members.

113.      Plaintiffs do not know the exact size or identities of the members of the

proposed class, since such information is in the exclusive control of the

Defendants.  Plaintiff is informed and believes and alleges thereon the class

ONE consists of anywhere from 10,000 to 15,000 California debtors who

originated MLNs with CHASE or any of its subsidiaries.  Plaintiff is informed

and believes and alleges thereon the class TWO size consists of anywhere from

10,000 to 15,000 California debtors who originated MLNs with

CLASS ACTION COMPLAINT

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

1  WASHINGTON MUTUAL BANK, N.A., and whose loans were subsequently

2  serviced by CHASE or any of its subsidiaries. Therefore, the proposed Classes

3

4  is so numerous that joinder of all members is impracticable.

5  114.    A class action is superior to other methods for the fast and efficient

6

7  adjudication of this controversy and to avoid the risk of disparate and

8  inconsistent rulings in different courts. A class action regarding the issues in

9

10  this case does not create any problems of manageability.

11  115.    A pattern and practice of conduct by defendants exist in this case wherein

12  common questions of fact and law predominate over any questions affecting

13

14  only individual members including, but not limited to the following:

15       a.  Whether CHASE is estopped from denying the truth of the matters

16

17           asserted in various title, endorsements, affidavits and other documents

18           filed in bankruptcy matters;

19       b.  Whether the assignments, endorsements and affidavits used as evidence

20

21           of standing in thousands of bankruptcy matters are false, misleading anti-

22           competitive or deceptive;

23

24       c.  Whether the use of the aforementioned assignments, endorsements and

25           affidavits as evidence of standing in thousands of bankruptcy matters

26

27           constitute a violation of California Business & Professions Code §17200;

28

**24**

d.  Whether defendant's actions are systemic and constitute a business pattern or practice;

e.  A determination of the affect of defendant's business practice on competition with other loan servicers and lenders engaged in a similar bankruptcy practices;

f.  The amount of damages appropriate for violation Cal B&P §17200 in this context;

g.  The amount of court sanctions and punitive damages appropriate for violation of Cal B&P §17200 in this context;

h.  The amount of restitution and disgorgement appropriate for violation of Cal B&P §17200 in this context;

i.  The amount of cost savings benefiting CHASE and its agents from the deceptive practices violating Cal B&P §17200 in this context;

j.  The effect of vacating Bankruptcy Orders, claims and awards granted based on the alleged deceptive business practice;

k.  The degree, scope and cost of implementing remedial processes and oversight of CHASE's future bankruptcy practice;

l.  Whether injunctive relief is appropriate.

116.    This is a matter of important public policy because the fair treatment of distressed borrowers is state and national policy priorities.

CLASS ACTION COMPLAINT

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

117.    The claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

118.    The individually named Plaintiffs will fairly and adequately protect the interests of the Class.  They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation.

119.    The putative class action meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b) and/or 23(c).

120.    The nature of notice to the proposed class required and/or contemplated is the best practicable method possible and contemplated the defendant's list when disclosed would most likely be media outlets, mailing to the property addresses affected by the filed foreclosures and internet and other general notices are contemplated to ensure notice.

121.    Defendants have acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

CLASS ACTION COMPLAINT

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

# VI.   CLAIMS

## FIRST CLAIM
### Unfair and Unlawful Practices
### (Against All defendants and Does 1 through 10)

122.   Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

123.   Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

124.   California's Unfair Competition Law (UCL) defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal Bus & Prof Code §17200 et seq.

125.   As stated above, defendant engage in unlawful, deceptive, misleading and anti-competitive business practices under the UCL based on deceit upon the bankruptcy court, perjury, fraud, intentional misrepresentation, negligent misrepresentation, contractual interference and conversion as alleged above.

126.   As stated above, that CHASE is in the business of manufacturing chain of title transfer evidence on demand so as to falsely prove standing in thousands of bankruptcy matters.

127.   As stated above, that through use of manufactured evidence, that defendant has systemically deceives the bankruptcy court and other bankruptcy

27

players as to the identity of the true beneficiary or creditor class members'

MLNs.

128.   As stated above, that CHASE created documents and affidavits that were

false so as to create the illusion of standing.

129.   That CHASE has systemically violated federal perjury statute, 18 U.S.C.

1621.

130.   Under 18 U.S.C. 1621

Whoever—
**(1)** having taken an oath before a competent tribunal, officer, or person, in
any case in which a law of the United States authorizes an oath to be
administered, that he will testify, declare, depose, or certify truly, or that any
written testimony, declaration, deposition, or certificate by him subscribed,
is true, willfully and contrary to such oath states or subscribes any material
matter which he does not believe to be true; or
**(2)** in any declaration, certificate, verification, or statement under penalty of
perjury as permitted under section 1746 of title 28, United States Code,
**willfully subscribes as true any material matter which he does not
believe to be true;**
is guilty of perjury and shall, except as otherwise expressly provided by law,
be fined under this title or imprisoned not more than five years, or both. This
section is applicable whether the statement or subscription is made within or
without the United States.

131.   That CHASE, through its agent, filed a declaration under penalty of

perjury in the U.S. Bankruptcy Court representing that CHASE was the party

entitled to enforce the terms of the BAKENIE MLN in order to induce the court

to relieve CHASE from the automatic stay.  It was signed by CHASE agent

28

Kimberly Horne, a representative or authorized agent of CHASE and incorporated the fabricated endorsement executed by Angela Nolan by reference.

132.     That the "Assignment of Deed of Trust" filed with the Orange County Recorder's Office on July 28, 2009 September 10, 2010 purports to represent that a transfer of the BAKENIE MLN occurred from CHASE to Chase Mortgage Finance Trust Series 2006-1 on April 21, 2009.

133.     That the Assignment of Deed of Trust is a fabricated document used by CHASE et al, in BAKENIE's adversary proceeding, so as to create the illusion that Chase Mortgage Finance Trust Series 2006-1 is a new creditor and party entitled to enforce the terms of the MLN.

134.     That the Assignment of Deed of Trust was executed by LUPE TABITA of NORTHWEST TRUSTEE SERVICES INC. as Attorney in Fact for CHASE.

135.     That NORTHWEST TRUSTEE SERVICES INC is not the Attorney in fact for CHASE.

136.     That LUPE TABITA is as a known "robo-signer" who has signed thousands of false documents submitted as evidence of standing in bankruptcy matters for the benefit and at the direction of CHASE et al.

137.     That the transaction claimed by CHASE in the Assignment of Deed never occurred as represented by TABITA.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

138.     Plaintiff is informed and believes and alleges thereon that CHASE did not believe any of these facts when it caused the Assignment to be recorded.

139.     That the example set forth in the BAKENIE bankruptcy matters are typical examples of the deceptive business practice being utilized by CHASE in thousands of bankruptcy cases.

140.     That these same deceptive business practices have been employed in each and every bankruptcy matter wherein CHASE appears as a secured creditor.

141.     That these described deceptive business practices are not limited to the BAKENIE bankruptcy matters.

142.     That CHASE's business practice creates TWO distinctly false representations of the historical "chain of title" of the BAKENIE MLN, neither of which is consistent with the Pooling and Servicing Agreement.

143.     That was false and inaccurate and manufactured for the purpose of deceiving the bankruptcy players into accepting CHASE's version of the chain of title transfers without regard to the truth.

144.     A debt collector violates 15 USC 1692f by

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
(B) there is no present intention to take possession of the property; or
(C) the property is exempt by law from such dispossession or disablement.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

145.     As stated above, CHASE, individually and through its authorized

representatives, has causes thousands of false and fabricated declarations,

assignments, endorsements, proofs of claim and motions made under penalty of

perjury to be filed with the United States Bankruptcy Court in each of the

bankruptcy cases of BAKENIE and other class members.

146.     California Penal Code §532 states:

532.   (a) Every person who knowingly and designedly, by any false or
fraudulent representation or pretense, defrauds any other person of
money, labor, or property, whether real or personal, or who causes or
procures others to report falsely of his or her wealth or mercantile
character, and by thus imposing upon any person obtains credit, and
thereby fraudulently gets possession of money or property, or obtains
the labor or service of another, is punishable in the same manner
and to the same extent as for larceny of the money or property so
obtained.
  (b) Upon a trial for having, with an intent to cheat or defraud
another designedly, by any false pretense, obtained the signature of
any person to a written instrument, or having obtained from any
person any labor, money, or property, whether real or personal, or
valuable thing, the defendant cannot be convicted if the false
pretense was expressed in language unaccompanied by a false token or
writing, unless the pretense, or some note or memorandum thereof is
in writing, subscribed by or in the handwriting of the defendant, or
unless the pretense is proven by the testimony of two witnesses, or
that of one witness and corroborating circumstances. This section
does not apply to a prosecution for falsely representing or
personating another, and, in that assumed character, marrying, or
receiving any money or property.

Penal Code §532f states:
532f.  (a) A person commits mortgage fraud if, with the intent to
defraud, the person does any of the following:
  (1) Deliberately makes any misstatement, misrepresentation, or
omission during the mortgage lending process with the intention that
it be relied on by a mortgage lender, borrower, or any other party to
the mortgage lending process.
  (2) Deliberately uses or facilitates the use of any misstatement,
misrepresentation, or omission, knowing the same to contain a
misstatement, misrepresentation, or omission, during the mortgage
lending process with the intention that it be relied on by a mortgage
lender, borrower, or any other party to the mortgage lending
process.
  (3) Receives any proceeds or any other funds in connection with a
mortgage loan closing that the person knew resulted from a violation

31

**CLASS ACTION COMPLAINT**

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

of paragraph (1) or (2) of this subdivision.

(4) Files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission.

(b) An offense involving mortgage fraud shall not be based solely on information lawfully disclosed pursuant to federal disclosure laws, regulations, or interpretations related to the mortgage lending process.

(c) (1) Notwithstanding any other provision of law, an order for the production of any or all relevant records possessed by a real estate recordholder in whatever form and however stored may be issued by a judge upon a written ex parte application made under penalty of perjury by a peace officer stating that there are reasonable grounds to believe that the records sought are relevant and material to an ongoing investigation of a felony fraud violation.

(2) The ex parte application shall specify with particularity the records to be produced, which shall relate to a party or parties in the criminal investigation.

(3) Relevant records may include, but are not limited to, purchase contracts, loan applications, settlement statements, closing statements, escrow instructions, payoff demands, disbursement reports, or checks.

(4) The ex parte application and any subsequent judicial order may be ordered sealed by the court upon a sufficient showing that it is necessary for the effective continuation of the investigation.

(5) The records ordered to be produced shall be provided to the peace officer applicant or his or her designee within a reasonable time period after service of the order upon the real estate recordholder.

(d) (1) Nothing in this section shall preclude the real estate recordholder from notifying a customer of the receipt of the order for production of records, unless a court orders the real estate recordholder to withhold notification to the customer upon a finding that this notice would impede the investigation.

(2) If a court has made an order to withhold notification to the customer under this subdivision, the peace officer who or law enforcement agency that obtained the records shall notify the customer by delivering a copy of the ex parte order to the customer within 10 days of the termination of the investigation.

(e) (1) Nothing in this section shall preclude the real estate recordholder from voluntarily disclosing information or providing records to law enforcement upon request.

(2) This section shall not preclude a real estate recordholder, in its discretion, from initiating contact with, and thereafter communicating with and disclosing records to, appropriate state or local agencies concerning a suspected violation of any law.

(f) No real estate recordholder, or any officer, employee, or agent of the real estate recordholder, shall be liable to any person for either of the following:

(1) Disclosing information in response to an order pursuant to this section.

(2) Complying with an order under this section not to disclose to the customer the order, or the dissemination of information pursuant to the order.

32

**CLASS ACTION COMPLAINT**

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

(g) Any records required to be produced pursuant to this section shall be accompanied by an affidavit of a custodian of records of the real estate recordholder or other qualified witness which states, or includes in substance, all of the following:

(1) The affiant is the duly authorized custodian of the records or other qualified witness and has authority to certify the records.

(2) The identity of the records.

(3) A description of the mode of preparation of the records.

(4) The records were prepared by the personnel of the business in the regular course of business at or near the time of an act, condition, or event.

(5) Any copies of records described in the order are true copies.

(h) A person who violates this section is guilty of a public offense punishable by imprisonment in a county jail for not more than one year or by imprisonment pursuant to subdivision (h) of Section 1170.

(i) For the purposes of this section, the following terms shall have the following meanings:

(1) "Person" means any individual, partnership, firm, association, corporation, limited liability company, or other legal entity.

(2) "Mortgage lending process" means the process through which a person seeks or obtains a mortgage loan, including, but not limited to, solicitation, application, origination, negotiation of terms, third-party provider services, underwriting, signing and closing, and funding of the loan.

(3) "Mortgage loan" means a loan or agreement to extend credit to a person that is secured by a deed of trust or other document representing a security interest or lien upon any interest in real property, including the renewal or refinancing of the loan.

(4) "Real estate recordholder" means any person, licensed or unlicensed, that meets any of the following conditions:

(A) Is a title insurer that engages in the "business of title insurance" as defined by Section 12340.3 of the Insurance Code, an underwritten title company, or an escrow company.

(B) Functions as a broker or salesperson by engaging in any of the type of acts set forth in Sections 10131, 10131.1, 10131.2, 10131.3, 10131.4, and 10131.6 of the Business and Professions Code.

(C) Engages in the making or servicing of loans secured by real property.

(j) Fraud involving a mortgage loan may only be prosecuted under this section when the value of the alleged fraud meets the threshold for grand theft as set out in subdivision (a) of Section 487.

## 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

CLASS ACTION COMPLAINT

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

147.     That CHASE's systemic practices rise to the level of "unlawful" under the perjury statute.

**CLASS ACTION COMPLAINT**

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

148.    That CHASE's systemic practices rise to the level of "fraudulent" under

the plain definition of the word and is highly likely to mislead the public

including the bankruptcy players.

149.    That CHASE's systemic practices rise to the level of "unfair" under the

plain definition of the word as these practices provide CHASE a cost savings

advantage over its competitors.

150.    That CHASE continues to employ the business practice of manufacturing

evidence to support its position in bankruptcy matters in violation of existing

"Consent Orders" to refrain from wrongful and deceptive foreclosure practices.

151.    That CHASE continues to present evidence and assertions as to the chain

of title transfers of MLNs in bankruptcy matters, that CHASE either knows to

be false or where CHASE has no reason to believe that these assertions

contained in these documents are true.

152.    That CHASE engages in this deceptive business practice for its own

financial benefit, at the expense of class members, investors, competitors and

with complete distain for the bankruptcy court system.

153.    CHASE is motivated by cost savings relative to its competitors and

therein gains an unfair competitive advantage over its legitimate industry rivals.

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

154.     CHASE is motivated by mitigating exposure to investors of MBSTs for its failure, and the failure of WAMU, to properly securitized MLNs in the manner promised to investors.

155.     That CHASE views the requirement of standing in the bankruptcy system as a costly barrier to getting what it wants:  the quick and inexpensive resolution to thousands of bankruptcy maters with minimal opposition.

156.     Rather than satisfy its burden of proof to establish standing, CHASE has determined that manufacturing evidence to accomplish its goals and chill opposition is a more cost effective business practice.

157.     As stated, the process of proving up standing for a Mortgage Backed Security Trust typically involves proving three true sales of a given MLN (From Originator to Sponsor to Depositor to the Trust).  CHASE utilizes this deceptive business practice to avoid the costs associated with this proving standing.

158.     To CHASE, the ends justify the means:  Whether there is a lack of ANY evidence of a MBSTs standing OR where CHASE views the cost of proving up THREE MLNs transfers is too high, CHASE efficiently avoids the challenge utilizing the business practice of manufacturing evidence.

159.     The cost savings benefits to CHASE are estimated to be in the tens of millions in saved legal fees, technology costs and increased time to foreclosure.

36

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

160.     Through the utilization of this practice, CHASE receives additional financial benefits including trustee payouts from confirmed plans based on submitted Proofs of Claim supported by fabricated evidence.  Said payouts are at the expense of unsecured creditors and debtors alike.

161.     Most egregiously, the network attorneys utilize the business practice to obtain attorney fees awards from by the bankruptcy judges ranging from $600-$1000 for each successful motion for relief of stay and allowed proofs of claim. Said awards allow CHASE to pad its claims and add fees to the loan balances arrearage claims of class members.

162.     That CHASE's manufactured evidence is so persuasive that 95% of motions for relief of stay are granted without opposition and over 95% of CHASE's Proofs of Claims are allowed.

163.     That the systemic use of the fabricated evidence has a chilling effect on class debtors and their attorneys.  Said business practice discourages bankruptcy players from offering objections or from questioning the validity of CHASE's false claims based on standing.

164.     That the systemic use of the fabricated evidence provides CHASE with an unfair competitive advantage over other loan servicers and lender s who must bear the cost of proving up bankruptcy matters without the benefit of utilizing fabricated evidence to fit the desired outcome.

37

**CLASS ACTION COMPLAINT**
**_BAKENIE v JPMORGAN CHASE BANK, N.A._**

165.    That the systemic use of the fabricated evidence has a chilling effect on class debtors and their attorneys.  Said business practice discourages bankruptcy players from offering objections or from questioning the validity of CHASE's false claims based on standing.

166.    That the fabricated title documents and affidavits used by CHASE, while persuasive, are blatant misrepresents the chain of title transfer of class member's MLN and affront to the integrity of the legal system.

167.    That after a non-judicial foreclosure sale, class members remain indebted to the true beneficiary for the unsecured note but without credit for the loss of the collateral to CHASE.  Said business practice also harms the true creditors.

168.    Plaintiffs are further informed and believe and allege thereon that each of these defendants' business practices are likely to continue to deceive the public and are likely to continue to induce bankruptcy players including  other class members  into relying to their detriment on false representations made in title documents and affidavits offered in bankruptcy matters.

169.    Defendants' acts, and each of them, violate the unfair competition laws of the state of California and specifically California Business and Professions Code §§ 17200, et seq. as indicated above.

38

**CLASS ACTION COMPLAINT**
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

170.    As a proximate result of defendants' conduct, plaintiffs, each of them, was injured financially and/or to her property rights. Said conduct as set forth herein resulted in statutory, general and special damages.

171.    Plaintiffs are further entitled to injunctive relief and any other equitable relief that the court deems appropriate.

Wherefore plaintiff demands judgment against defendants as set forth below.

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

a.  A determination whether CHASE is estopped from denying the truth of the matters asserted in various title and other documents offered in bankruptcy matters;

b.  An order certifying the plaintiff TILA class, appointing named plaintiffs as the representatives of the class and appointing the law firm(s) representing the named plaintiffs as counsel for the TILA class;

c.  A determination whether defendant's business practices, actions, failures to act, representations and assertions in bankruptcy matters constitute violations of California Business & Professions Code §17200;

39

CLASS ACTION COMPLAINT
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

d. In the alternative, an order certifying the plaintiff §17200 class, appointing named plaintiffs as the representatives of the class and appointing the law firm(s) representing the named plaintiffs as counsel for the §17200 class;

e. Pursuant to Business and Professions Code § 17203, an order that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violations of § 17200, including, but not limited to, the violations alleged herein.

f. A determination of the amount of actual, special and general damages appropriate for violations of Cal B&P §17200 in this context;

g. A determination of the amount of statutory damages and civil penalties appropriate for violations of Cal B&P §17200 in this context;

h. A determination of the amount of court sanctions and punitive damages appropriate for violations of Cal B&P §17200 in this context;

i. A determination of the amount of restitution and disgorgement appropriate for violations of Cal B&P §17200 in this context;

j. A determination of the amount of cost savings benefiting CHASE from the deceptive practices violating Cal B&P §17200 in this context;

k. An Order vacating all Bankruptcy orders, claims and awards granted based on CHASE's misrepresentations and deceptive business practices;

40

**CLASS ACTION COMPLAINT**
**BAKENIE v JPMORGAN CHASE BANK, N.A.**

1     l.  An Order directing CHASE to implement remedial processes and oversight of

2

3          CHASE's future bankruptcy and foreclosure practices;

4     m.  Costs

5

6     n.  Attorney fess

7     o.  Prejudgment interest at the statutory rate;

8

9     p.  Post-judgment interest;

q.  Such other and further relief as the Court finds necessary and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated:  January 11, 2012       LAW OFFICES OF J.ARTHUR ROBERTS


/s/   Joseph Arthur Roberts_____
         JOSEPH ARTHUR ROBERTS, ESQ.
         Attorney for Plaintiffs BAKENIE
         and all others similarly situated

**CLASS ACTION COMPLAINT**
*BAKENIE v JPMORGAN CHASE BANK, N.A.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A-1

CLASS ACTION COMPLAINT

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

E-FILED ON December 15, 2009

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| STEVEN W. PITE (CA SBN 157537)<br>DAVID E. McALLISTER (CA SBN 185831)<br>JOSEPH C. DELMOTTE (CA SBN 259460)<br>PITE DUNCAN, LLP<br>4375 Jutland Drive, Suite 200; P.O. Box 17933<br>San Diego, CA 92177-0933<br>Telephone: (858)750-7600      Facsimile: (619) 590-1385<br>*Attorney for:*    JPMORGAN CHASE BANK, N.A., Movant | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>ERNEST MICHAEL BAKENIE, Debtor(s) | CHAPTER: 7<br><br>CASE NO.: 8:09-bk-18443-TA |
|---|---|
| | DATE:      January 12, 2010<br>TIME:      10:30 a.m.<br>CTRM:    5B |

**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**UNDER 11 U.S.C. § 362 (with supporting declarations)**
**(MOVANT: JPMORGAN CHASE BANK, N.A.)**
**(Real Property)**

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:** ☐ **255 East Temple Street, Los Angeles**    ☒ **411 West Fourth Street, Santa Ana**
   ☐ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**
   ☐ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:
   ☐ at the hearing ☐ at least _____ court days before the hearing.

   (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

   (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

   (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's office to obtain a copy of an approved court form for use in preparing your response (*Optional Court Form F 4001-1M.RES*), or you may prepare your response using the format required by Local Bankruptcy Rule 1002-1

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                              **F 4001-1M.RP**

Motion for Relief From Stay (Real Property) - Page 2 of 14                    F 4001-1M.RP

| In re                          (SHORT TITLE) | CHAPTER: 7 |
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

5.   If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

Dated:   December 15, 2009                         PITE DUNCAN, LLP


                                                   /s/ Joseph C. Delmotte (CA SBN 259460)
                                                   JOSEPH C. DELMOTTE
                                                   Attorney for Movant

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009                                                          F 4001-1M.RP

Motion for Relief from Stay (Real Property) - Page 3 of 14                    **F 4001-1M.RP**

| In re                    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY
# (MOVANT: JPMORGAN CHASE BANK, N.A.)

1. **The Property at issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):
   *Street Address:*        1617 W Balboa Blvd
   *Apartment/Suite no.:*
   *City, State, Zip Code:*   Newport Beach, California 92663

   Legal description or document recording number (including county of recording): Orange County; Inst. No. 2006000457132

   ☐ See attached continuation page.

2. **Case History:**
   a. ☒ A voluntary ☐ An involuntary petition under Chapter    ☒ 7  ☐ 11  ☐ 12  ☐ 13
      was filed on: 8/13/2009
   b. ☐ An Order of Conversion to Chapter     ☐ 7  ☐ 11  ☐ 12  ☐ 13
      was entered on:
   c. ☐ Plan was confirmed on *(specify date)*:
   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See Attached Declaration.

3. **Grounds for Relief from Stay:**
   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
      (1) ☒ Movant's interest in the Property is not adequately protected.
         (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.
         (b) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
         (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
         (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.
      (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
         (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
         (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
         (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.
         (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

---

*January 2009*                                                      **F 4001-1M.RP**

Case 8:12-cv-00060-JVS-MLG   Document 1    Filed 01/13/12   Page 46 of 83   Page ID #:46

Case 8:09-bk-18443-A    Doc 20    Filed 12/15/09    Ente.   12/15/09 08:10:06    Desc
Motion for Relief from Stay (Real Property) - Page 4 of 14
Main Document    Page 4 of 13

**F 4001-1M.RP**

| In re                    (SHORT TITLE)<br>ERNEST MICHAEL BAKENIE, Debtor(s) | CHAPTER: 7 |
|---|---|
| | CASE NO.: 8:09-bk-18443-TA |

(3) ☐ *(Chapter 12 or 13 cases only)*
    (a) ☐ Postconfirmation plan payments have not been made to the Standing Trustee.
    (b) ☐ Postconfirmation payments required by the confirmed plan have not been made to Movant.
(4) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:
    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or
    (2) ☐ Multiple bankruptcy filings affecting the Property.

4. ☐ Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5. **Evidence in Support of Motion:** *(Important Note: Declaration(s) in support of the Motion MUST be attached hereto.)*
  a. ☒ Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.
  b. ☐ Other Declaration(s) are also attached in support of this Motion.
  c. ☒ Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as Exhibit 3.
  d. ☐ Other evidence *(specify):*

6. ☐ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following** *(specify forms of relief requested)*:

1. Relief from the Stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2. ☐ Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3. ☒ Additional provisions requested:
  a. ☒ That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.
  b. ☒ That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived.
  c. ☐ That Extraordinary Relief be granted as set forth in the Attachment *(Use Optional Court Form F 4001-1M ER)*.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 5 of 14*                    F 4001-1M.RP

| In re                                   (SHORT TITLE) | CHAPTER: 7 |
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

 

     d.   ☒   For other relief requested, see attached continuation page.

4.   If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated:   December 15, 2009                                    Respectfully submitted,

                                             JPMORGAN CHASE BANK, N.A.

                                             PITE DUNCAN, LLP

                                             /s/ Joseph C. Delmotte (CA SBN 259460)
                                             JOSEPH C. DELMOTTE
                                             Attorney for Movant

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    F 4001-1M.RP

Case 8:12-cv-00060-JVS-MLG   Document 1   Filed 01/13/12   Page 48 of 83   Page ID #:48

Case 8:09-bk-18443-,A   Doc 20   Filed 12/15/09   Enter. 12/15/09 08:10:06   Desc
Motion for Relief from Stay (Real Property) - Page 6 of 14
Main Document   Page 6 of 13

F 4001-1M.RP

| In re                         (SHORT TITLE) | CHAPTER: 7 |
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

# ATTACHMENT 3(d)

3.  Additional provisions requested:

b.  ☒  That Movant be permitted to offer and provide Debtor(s) with information re: a potential Forbearance
Agreement, Loan Modification, Refinance Agreement, or other Loan Workout/Loss Mitigation Agreement, and to
enter into such agreement with Debtor(s).

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*

F 4001-1M.RP

Case 8:12-cv-00060-JVS-MLG   Document 1    Filed 01/13/12   Page 49 of 83   Page ID #:49

Case 8:09-bk-18443-TA    Doc 20    Filed 12/15/09    Entered 12/15/09 08:10:06    Desc
Main Document    Page 7 of 13
Motion for Relief from Stay (Real Property) - Page 7 of 14

F 4001-1M.RP

| In re                    (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

## REAL PROPERTY DECLARATION
## (MOVANT:  JPMORGAN CHASE BANK, N.A.)

I, Kimberly M. Horne, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

☐ I am the Movant and owner of the Property.
☐ I manage the Property as the authorized agent for the Movant.
☐ I am employed by Movant as *(state title and capacity)*:
☒ Other *(specify)*:  See **Attachment 1**

2.  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property.  I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the Court if required.

3.  a.  The address of the real property that is the subject of this Motion is:
       *Street Address:*              1617 W Balboa Blvd
       *Apartment/Suite no.:*
       *City, State, Zip Code:*     Newport Beach, California 92663

    b.  The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit 2.

       ☐ See attached page.

4.  Type of property:  *(Check all applicable boxes)*
    a.  ☒ Debtor's(s') principal residence  b.  ☐ Other single family residence
    c.  ☐ Multi-unit residential            d.  ☐ Commercial
    e.  ☐ Industrial                        f.  ☐ Vacant land
    g.  ☐ Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*

F 4001-1M.RP

Case 8:09-bk-18443-TA   Doc 20   Filed 12/15/09   Entered 12/15/09 08:10:06   Desc
Main Document   Page 8 of 13

Motion for Relief from Stay (Real Property) - Page 8 of 14     **F 4001-1M.RP**

| In re                                    (SHORT TITLE) | CHAPTER: 7 |
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

5. Nature of Debtor's(s') interest in the Property:
  a. ☒ Sole owner
  b. ☐ Co-owner(s) *(specify):*
  c. ☐ Lien holder *(specify):*
  d. ☐ Other *(specify):*
  e. ☒ Debtor(s)   ☒ did   ☐ did not list the Property in the Schedules filed in this case.
  f. ☒ Debtor(s) acquired the interest in the Property by   ☒ grant deed   ☐ quitclaim deed   ☐ trust deed
     The deed was recorded on:  July 7, 2006

6. Amount of Movant's claim with respect to the Property:

|     | | PREPETITION | POSTPETITION | TOTAL |
|-----|--|-------------|--------------|-------|
| a. | Principal: | $ | $ | $1,170,000.00 |
| b. | Accrued Interest: | $ | $ | $71,858.90 |
| c. | Late Charges | $ | $ | $2,090.13 |
| d. | Costs (Attorney's Fees, Other Costs): | $ | $ | $0.00 |
| e. | Advances (Property Taxes, Insurance): | $ | $ | $4,468.46 |
| f. | TOTAL CLAIM as of:11/1/2009 | $ | $ | $1,246,417.49 |

  g. ☐ Loan is all due and payable because it matured on *(specify date):*

7. Movant holds a   ☒ deed of trust   ☐ judgment lien   ☐ other *(specify)*
   that encumbers the Property.
  a. A true and correct copy of the document as recorded is attached as Exhibit 2.
  b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 1.
  c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is
     attached as Exhibit _____.

8. Status of Movant's claim relating to the Property  *(fill in all applicable information requested below):*
  a. Current interest rate:  6.125%
  b. Contractual maturity date: 8/1/2036
  c. Amount of current monthly payment: $5,971.88
  d. Number of PREPETITION payments that have come due and were not made:   9. Total amount: $53,746.92
  e. Number of POSTPETITION payments that have come due and were not made:   3. Total amount: $17,971.88
  f. Date of POSTPETITION default:   9/1/2009
  g. Last payment received on the following date:
  h. Notice of default recorded on the following date:
  i. Notice of sale recorded on the following date:
  j. Foreclosure sale originally scheduled for the following date:
  k. Foreclosure sale currently scheduled for the following date:
  l. Foreclosure sale already held on the following date:
  m. Trustee's deed on sale already recorded on the following date:
  n. Future payments due by time of anticipated hearing date *(if applicable):*
     An additional payment of $5,971.88 will come due on December 1, 2009, and on the 1st day of each month thereafter.  If the
     payment is not received within 15 days of the due date, a late charge of five percent of the amount due will be charged to the loan

9. Attached hereto as Exhibit _____ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates
   and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

*January 2009*                                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 9 of 14*

**F 4001-1M.RP**

| | |
|---|---|
| In re   (SHORT TITLE)<br>ERNEST MICHAEL BAKENIE, Debtor(s) | CHAPTER: 7 |
| | CASE NO.: 8:09-bk-18443-TA |

10. ☒ *(Chapter 7 and 11 cases only):* The fair market value of the entire Property is $1,075,000.00, established by:
   a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit _____.
   b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.
   c. ☒ A true and correct copy of relevant portion(s) of Debtor's Schedules attached as Exhibit 3.
   d. ☐ Other *(specify)*:

11. ☐ The fair market value of the Property is declining based on/due to:_____
_____

12. ☒ **Calculation of equity in Property**
   a. Based upon ☐ a preliminary title report   ☒ Debtor's(s') admissions in the schedules filed in this case,
   the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor(s) (if any) | Amount Known to Declarant and Source |
|---|---|---|---|
| 1st Deed of Trust: | Movant | | $1,246,417.49 |
| 2nd Deed of Trust: | Flagstar Bank | $442,570.00 | |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | |
| Other: | | | |

**TOTAL DEBT:   $1,688,987.49**

   b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit 3, and consists of:
   ☐ Preliminary title report
   ☒ Relevant portions of Debtor's(s') Schedules as filed in this case
   ☐ Other *(specify)*:

   c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $<613,987.49> (§ 362(d)(2)(A)).

   d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $<171,417.40> (§ 362(d)(1)).

   e. Estimated costs of sale: $86,000.00 (Estimate based upon 8% of estimated gross sales price).

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:
   a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
   Confirmation hearing currently scheduled for (or concluded on) the following date:
   Plan confirmed on the following date *(if applicable)*:

   b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of this case:
   *(Number of)* _____ payment(s) due at $_____ each   = $ _____
   *(Number of)* _____ payment(s) due at $_____ each   = $ _____
   *(Number of)* _____ late charge(s) at $_____ each   = $ _____
   *(Number of)* _____ late charge(s) at $_____ each   = $ _____
   *(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009

F 4001-1M.RP

Motion for Relief from Stay (Real Property) – *Page 10 of 14*           **F 4001-1M.RP**

| In re                          (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

c.  Postpetition/preconfirmation advances or other charges due but unpaid:                    $_____
(See attachment for details of type and amount.)

**TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**                    $_____

d.  Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation (*if applicable*):
*(Number of)* _____ payment(s) due at $_____ each  = $ _____
*(Number of)* _____ payment(s) due at $_____ each  = $ _____
*(Number of)* _____ late charge(s) at $_____ each  = $ _____
*(Number of)* _____ late charge(s) at $_____ each  = $ _____

e.  Postconfirmation advances or other charges due but unpaid:                    $_____
(See attachment for details of type and amount.)

**TOTAL POSTCONFIRMATION DELINQUENCY:**                    $_____

f.  ☐ The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.
g.  ☐ See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan (*attach Court Form F 4001-1M.13*).

14. ☐ Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15. ☐ The court determined that the Property qualifies as single asset real estate on _____.  More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16. ☐ See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17. ☐ The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:
a.  ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval.  See attached continuation page for facts establishing the scheme.
b.  ☐ Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
1.  Case Name:
Case Number:                          Chapter:
Date Filed:                          Date Dismissed:                          Date Discharged:
Relief from stay re this property ☐ was  ☐ was not  granted.
2.  Case Name:
Case Number:                          Chapter:
Date Filed:                          Date Dismissed:                          Date Discharged:
Relief from stay re this property ☐ was  ☐ was not  granted.
3.  ☐ See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder and defraud creditors.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                    **F 4001-1M.RP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A-2

43

**CLASS ACTION COMPLAINT**

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

Motion for Relief from Stay (Real Property) - Page 11 of 14                                    **F 4001-1M.RP**

| In re                              (SHORT TITLE) | CHAPTER: 7 |
|---|---|
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

**Attachment 1.**

I, Kimberly M. Horne, declare:

1. I am employed as a Mortgage Officer by Chase Home Finance, LLC. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding JPMorgan Chase Bank, N.A.'s ("Movant") interest in the real property that is the subject of this Motion.

2. I am familiar with the manner and procedures by which Chase Home Finance, LLCs business records are obtained, prepared, and maintained. Those records are obtained, prepared, and maintained by Chase Home Finance, LLC's employees or agents in the performance of their regular business duties at or near the time, and conditions, and/or events recorded thereon. The records are made either by persons with knowledge of the matters they record or from information obtained by persons with such knowledge. I have knowledge and/or access to Chase Home Finance, LLC's business records regarding the Note and Deed of Trust that are the subject of this action and have personally reviewed these business records prior to executing this declaration.

3. On or about July 1, 2006, Debtor, for valuable consideration, made, executed and delivered to Movant a Note in the principal sum of $1,170,000.00 (the "Note"). Pursuant to the Note, Debtor is obligated to make monthly principal and interest payments commencing September 1, 2006, and continuing until August 1, 2036, when all outstanding amounts are due and payable. The Note provides that, in the event of default, the holder of the Note has the option of declaring all unpaid sums immediately due and payable. A true and correct copy of the Note is attached hereto as exhibit 1 and incorporated herein by reference.

4. Movant is the current owner of the note and is entitled to enforce the provisions of the Note and Deed of Trust.

5. On or about July 1, 2006, the Debtor made, executed and delivered to Lender a Deed of Trust (the "Deed of Trust") granting Lender a security interest in real property commonly described as 1617 W Balboa Blvd, Newport Beach, California 92663 (the "Real Property"), which is more fully described in the Deed of Trust. The Deed of Trust provides that attorneys' fees and costs incurred as a result of the Debtor's bankruptcy case may be included in the outstanding balance under the Note. The Deed of Trust was recorded on July 7, 2006, in the Official Records of Orange County, State of California. A true and correct copy of the Deed of Trust is attached hereto as exhibit 2 and incorporated herein by reference.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

January 2009                                                                **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 12 of 14*          **F 4001-1M.RP**

| In re<br>ERNEST MICHAEL BAKENIE, Debtor(s)          (SHORT TITLE) | CHAPTER: 7<br><br>CASE NO.: 8:09-bk-18443-TA |
| --- | --- |

18. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 6 above that were taken after the filing of the bankruptcy petition in this case.

   a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on *December 11th*, 2009, at *Columbus* , *OH* .

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - Page 13 of 14                    **F 4001-1M.RP**

| In re                                      (SHORT TITLE) | CHAPTER: 7 |
| ERNEST MICHAEL BAKENIE, Debtor(s) | CASE NO.: 8:09-bk-18443-TA |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

The foregoing document described <u>NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On December 15, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

U.S. Trustee served pursuant to Local Bankruptcy Rule 2002-2(a) (2)

☐ Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On December 15, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Honorable Theodor Albert
U.S. Bankruptcy Court
411 West Fourth Street, Suite 5085
Santa Ana, CA 92701-4593

Ernest Michael Bakenie
1617 W Balboa Blvd
Newport Beach, CA 92663

Joseph A Roberts
3345 Newport Blvd Ste 213
Newport Beach, Ca 92663

Richard A. Marshack
5410 Trabuco Road Suite 130
Irvine, CA 92620-5749

Flagstar Bank
c/o Managing or Servicing Agent
5151 Corporate Dr
Troy, MI 48098

☐ Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 15, 2009 | Michael Leewright | /s/ Michael Leewright |
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.RP**

# InterestFirst™ ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps - 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

July 1, 2006                              Newport Beach                         CA
    [Date]                                            [City]                              [State]

1617 W Balboa Blvd
Newport Beach, CA  92663

                                 [Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 1,170,000.00                              (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
JPMorgan Chase Bank, N.A.
a bank which is organized and existing under the laws of the United States of America
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.125                              %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on September 1st, 2006                              . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on August 1, 2036                              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at JPMorgan Chase Bank, N.A., c/o Chase Home Finance, LLC
3415 Vision Drive, Columbus, OH  43219
or at a different place if required by the Note Holder.

---

**MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR LIBOR INDEX - 10 Yr. Interest Only Period - Single Family - Fannie Mae Uniform Instrument**

VMP-197N (0508).01                              Form 3535 6/05
    VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5                              Initials: _____





EXHIBIT 1
14

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $5,971.88 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of August, 2011 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and one-half percentage points ( 2.500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.125 % or less than 2.500 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.125 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

Form 3535 6/05

Initials:

EXHIBIT 1
1 5

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  Fifteen             calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000             % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Form 3535  6/05
Initials: _____

EXHIBIT /
16

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Form 3535 6/05
Initials: _____

EXHIBIT 1
17

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
               -Borrower

_____ (Seal)
Ernest M. Bakenic         -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

_____ (Seal)
               -Borrower

*[Sign Original Only]*

EXHIBIT
16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A-3

CLASS ACTION COMPLAINT

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

<u>Allonge</u>

| Borrower(s): | BAKENIE ERNEST M | Loan Amount: | $1,170,000.00 |
| | 1617 W BALBOA BLVD | Loan #: | |
| | NEWPORT BEACH, CA 92663 | Note Date: | 7/1/2006 |

PAY TO THE ORDER OF:

without recourse this **8/25/2006**

Chase Home Finance, LLC s/b/m Chase Manhattan Mortgage Corporation

a Delaware Corporation

_Angela Nolan_

Angela Nolan
Assistant Vice President

EXHIBIT 1
19

Recording Requested By:

**This document was electronically recorded by**
**Zang Recording Services GG_B**

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

Return To:
JPMorgan Chase Custody Services
P.O. Box 8000
Monroe, LA  71211

|||||||||||||||||||||||||  60.00
**2006000457132** 04:29pm 07/07/06
104 51 D11 19
0.00 0.00 0.00 0.00 54.00 0.00 0.00 0.00

Prepared By:

Recording Request by
Zang Recording Services on
behalf of: UNI

**UNITED TITLE COMPANY**

————————[Space Above This Line For Recording Data]————————

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  July 1, 2006
together with all Riders to this document.
**(B) "Borrower"** is
Ernest M. Bakenie, An Unmarried Man

Borrower's address is  1617 W Balboa Blvd
Newport Beach, CA  92663 .  Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
JPMorgan Chase Bank, N.A.
Lender is a  national banking association
organized and existing under the laws of the United States of America

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                     Form 3005  1/01

VMP -6(CA) (0207)
Page 1 of 15          Initials:
      VMP MORTGAGE FORMS - (800)521-7291

EXHIBIT 2
20

Lender's address is
1111 Polaris Parkway, Columbus, OH 43240
Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is United Title Company

**(E) "Note"** means the promissory note signed by Borrower and dated July 1, 2006
The Note states that Borrower owes Lender
One million one hundred seventy thousand and 00/100                                            Dollars
(U.S. $ 1,170,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than August 1, 2036
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

-6(CA) (0207)                         Page 2 of 15                 Initials: _____        Form 3005   1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                          of ORANGE
    [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

See attached Schedule "A"    Exhibit "A"

Parcel ID Number: 04720207                          which currently has the address of
1617 W Balboa Blvd                                   [Street]
Newport Beach                          [City], California  92663          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

EXHIBIT 2
22

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

EXHIBIT 2
24

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

EXHIBIT 2
25

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

26

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

EXHIBIT 2
27

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

Initials: _____   Form 3005  1/01

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

EXHIBIT 2

29

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

Form 3005   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        Ernest M. Bakenie          -Borrower


_____        _____ (Seal)
                                                                   -Borrower


                        _____ (Seal)    _____ (Seal)
                                -Borrower                          -Borrower


                        _____ (Seal)    _____ (Seal)
                                -Borrower                          -Borrower


                        _____ (Seal)    _____ (Seal)
                                -Borrower                          -Borrower


-6(CA) (0207)                     Page 14 of 15                  Form 3005   1/01

EXHIBIT 2
33

State of California
County of  ORANGE                                    } ss.

On  7-1-06            before me,  DEAN  THAYER, notary public
                                                        personally appeared

Ernest M. Bakenie

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

DEAN THAYER
COMM. # 1460504
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JAN. 6, 2008

DEAN THAYER
COMM. # 1460504
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JAN. 6, 2008

Page 15 of 15          Initials: ____          Form 3005   1/01

Exhibit 2
34

## EXHIBIT "A"

LOT 21, BLOCK 16, SECTION B, NEWPORT BEACH TRACT, IN THE
CITY OF NEWPORT BEACH, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 4, PAGE 27,
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY.

B6D (Official Form 6D) (12/07)

In re  **Ernest Michael Bakenie**          Case No.    **8:09-bk-18443**

                      Debtor

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. xxxxxxxx3385 | | | Opened 8/11/06 Last Active 11/01/08 Deed of Trust Debtor's Residence Location: 1617 W Balboa Blvd Newport Beach, CA (Debtor will take back possession of house on 9/1/2009) | | | | | |
| Flagstar Bank 5151 Corporate Dr Troy, MI 48098 | | | | | | | | |
| | | | Value $        1,075,000.00 | | | | 442,570.00 | 0.00 |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | Value $ | | | | | |
| | | | Subtotal (Total of this page) | | | | 442,570.00 | 0.00 |
| **0** continuation sheets attached | | | Total (Report on Summary of Schedules) | | | | 442,570.00 | 0.00 |

EXHIBIT

36

B6A (Official Form 6A) (12/07)

In re    **Ernest Michael Bakenie**                                              Case No.    **8:09-bk-18443**
                                    _____                          _____
                                              Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Debtor's Residence Location: 1617 W Balboa Blvd Newport Beach, CA (Debtor will take back possession of house on 9/1/2009)** | Fee Simple | - | 1,075,000.00 | 442,570.00 |

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | Sub-Total > | 1,075,000.00 | (Total of this page) |
|  |  | Total > | 1,075,000.00 |  |

___0___  continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy

EXHIBIT 3
37

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

45

**CLASS ACTION COMPLAINT**

*BAKENIE v JPMORGAN CHASE BANK, N.A.*

Case 8:12-cv-00060-JVS-MLG   Document 1   Filed 01/13/12   Page 83 of 83   Page ID #:83

Case 8:09-ap-01814-.A   Doc 9-2   Filed 03/11/10   Entere. 03/11/10 17:25:49   Desc
Request for Judicial Notice Part 3   Page 8 of 16

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Chase Home Finance, LLC
3415 Vision Drive
Columbus, OH 43219

File No. 7037.19087          Title Order 4095084          MIN No.
Servicer Loan No. 1596810192

**IMPORTANT NOTICE**
Note: After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby
assigned

# ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
**U.S. Bank, N.A., as trustee for Chase Mortgage Finance Trust Series 2006-
A1**
all beneficial interest under that certain Deed of Trust dated **07/01/06**, executed by
**ERNEST M. BAKENIE, AN UNMARRIED MAN** to **UNITED TITLE COMPANY**, as Trustee;
and recorded **07/07/06**, as Instrument No.**2006000457132**, Book n/a ,Page n/a, of
Official Records in the County Recorder of **Orange** County, California.

TOGETHER with the note or notes therein described and secured thereby, the money
due and to become due thereon, with interest, and all rights accrued or to accrue under
said Deed of Trust including the right to have reconveyed, in whole or in part the real
property described therein.

Dated: 4/21/2009                    JPMorgan Chase Bank, N.A., by
                                    Northwest Trustee Services Inc. as
                                    Attorney in Fact

                                    By: Lupe Tabita

State of California
County of Orange

On 4/21/2009, before me, J Barragan, Notary Public, personally appeared Lupe Tabita, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal

J. BARRAGAN
Commission # 1635125
Notary Public - California
Orange County
My Comm. Expires Jan 5, 2010