137.    That DAVID SEYBOLD was not a duly authorized agent of MERS, nor was MERS of CHASE authorized to transfer property of the BNC bankruptcy estate to the aforementioned U.S. BANK

138.    That SEYBOLD, STANLEY, NORTHWEST AMERICAN TITLE COMPANY INC., NDEX MERS, DOE 4 and US BANK were at all times herein, each as agents and at the direction of CHASE.

139.    That the referenced Carillo Assignment is a fabricated and "photo-shopped" document created to support the illusion that the US BANK trust is the true party in interest and therefore standing to enforce the terms of the Carillo MLN, notwithstanding the bankruptcy filing of the loan's originator prior to the alleged transfer date, notwithstanding the Trust's Pooling and Servicing Agreement of the trust which requires all loans be transferred to it in 2006, not after default.

140.    That SUZANNE STANLEY and DOE 4 have engaged in improper notarial acts in violation of Texas and California law: that DOE 4 purported to act as a notary when she signed the Carillo Assignment, that SUZANNE STANLEY was not duly commissioned as a Texas notary, that this document was not actually signed by SUZANNE STANLEY, that SUZANNE STANLEY did not properly acknowledge this document, that SUZANNE STANLEY did willfully fail to keep her notary seal under her direct and exclusive control, that SUZANNE STANLEY did not duly record this transaction in a sequential journal or keep said journal in a safe and secure place, that this document is not duly acknowledged SUZANNE STANLEY in violation of Texas and California Notary law.

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

141.    That CHASE and other defendants solicited, coerced and influenced DOE 4 and SUZANNE STANLEY and to engage in the aforementioned improper notarial acts when it knew these acts to be improper notarial acts in violation of Texas and California Notary law.

142.    On March 31, 2009, CINDY A. SMITH, Assistant Secretary for CHASE HOME FINANCE LLC, "as Attorney in Fact" for the US BANK Trust, executes a Substitution of Trustee which purports to appoint NDEX WEST LLC as the TRUSTEE to the Carillo Deed of Trust, attached as **EXHIBIT 9.** That the Substitution of Trustee includes an acknowledgement executed by "JENNIFER JACOBY", an Ohio Texas Notary and was recorded in the Riverside county public land records on April 5, 2009.  That the Substitution of Trustee includes an affidavit of Section 2934 compliance signed by PATRICK DE JESUS and an acknowledgement executed by BROOK L. EWING, a Texas Notary.

143.    That CINDY A. SMITH was *not* Assistant Secretary for CHASE HOME FINANCE LLC, nor was CHASE HOME FINANCE LLC the attorney in fact for the US BANK Trust. Under the most basic tenets of bankruptcy law, CHASE and its agents had no standing to take action against this MLN which was property of the BNC bankruptcy estate without proper authorization.  and other defendants lacked such authorization.

144.    That SMITH, DE JESUS, EWING, JACOBY, RIC JUAREZ, KATHY LOCKERMAN, US BANK trust, STANLEY, SEYBOLD AND CHASE, NDEX WEST LLC and CHASE HOME FINANCE LLC were each as agents and at the direction of CHASE.

145.    That the referenced Carillo Substitution of Trustee is a fabricated and "photo-shopped" document created to support the illusion that the US BANK trust was the true party in interest and therefore standing to name a new trustee to the Carillo Deed of Trust.

146.    That  JENNIFER JACOBY, BROOK L. EWING and DOES 4 have engaged in improper notarial acts in violation of Texas, Ohio and California Notary laws:  that DOE 4 each purported to act as a notaries when they each signed the Carillo Substitution of Trustee, that neither JACOBY or EWING were duly commissioned, that this document was not

27

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

actually signed by JACOBY or EWING, that neither JACOBY or EWING did properly

acknowledge this document, that JACOBY or EWING did willfully fail to keep their notary

seal under their direct and exclusive control, that neither JACOBY or EWING did duly record

this transaction in a sequential journal or keep said journal in a safe and secure place, that this

document is not duly acknowledged by either JACOBY or EWING in violation of Texas,

Ohio and California Notary law.

147.      That CHASE and other defendants solicited, coerced and influenced DOE 4,

JACOBY or EWING and to engage in the aforementioned improper notarial acts when it

knew these acts to be improper notarial acts.

148.      Carillo never sought bankruptcy relief.  Instead, Carillo relied on the existence of a

loan modification agreement, written correspondence and oral representations made by

CHASE in believing she was protected her from a non-judicial foreclosure.

149.      Notwithstanding having made 15 loan modification payments and all requested

financial documentation, CHASE caused a non-judicial foreclosure sale of the subject

property on March 7, 2011.

150.      **EXHIBIT 10** purports to be a DEED UPON TRUSTEE SALE which grants to the

Carillo property to the US BANK trust by NDEX employee RIC JUAREZ.  That the DEED

UPON TRUSTEE SALE an acknowledgement executed by KATHY LOCKERMAN, a Texas

Notary.

151.      That the referenced Carillo DEED UPON TRUSTEE SALE is a fabricated and

"photo-shopped" document created to support the illusion that the non-judicial foreclosure

sale was duly perfected and that the US BANK trust is the true party in interest and therefore

standing to enforce the terms of the Carillo MLN, notwithstanding the bankruptcy filing of

the loan's originator prior to the alleged transfer date, notwithstanding the Trust's Pooling and

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

Servicing Agreement of the trust which requires all loans be transferred to it in 2006, not after default. That NDEX and employee RIC JUAREZ lacked proper authorization to act on behalf of the BNC Bankruptcy estate.

152.    That KATHY LOCKERMAN and DOE 4 have engaged in improper notarial acts in violation of Texas and California law: that DOE 4 purported to act as a notary when he signed the Carillo DEED UPON TRUSTEE SALE, that LOCKERMAN was not duly commissioned as a Texas notary, that this document was not actually signed by LOCKERMAN, that LOCKERMAN did not properly acknowledge this document, that LOCKERMAN did willfully fail to keep her notary seal under her direct and exclusive control, that LOCKERMAN did not duly record this transaction in a sequential journal or keep said journal in a safe and secure place, that this document is not duly acknowledged LOCKERMAN in violation of Texas and California Notary law.

153.    That and other defendants solicited, coerced and influenced DOE 4 and LOCKERMAN and to engage in the aforementioned improper notarial acts when it knew these acts to be improper notarial acts in violation of Texas and California Notary law.

154.    Thereafter, CHASE on behalf of US BANK initiated an Unlawful Detainer case seeking damages and passion of the subject property.

155.    That Carillo filed a Complaint in Superior Court alleging claims including fraud and wrongful foreclosure. That Carillo responded to the Unlawful Detainer Complaint and successfully had the two matters consolidated by the Superior Court.

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

156.      That the Superior Court case is still pending but most of Carillo's claims have been

dismissed by demurrer based on a Request for Judicial Notice of the Assignment of Deed of

Trust and the Substitution of Attorney.

157.      That Plaintiff intends pursue individual claims outside of this Class Action and does

not seek a determination of his claims for Wrongful Foreclosure or the legal effect of

improper notarization of foreclosure documents affecting Plaintiff's property.

158.      Rather, that Plaintiff seeks a determination of the scope of the systemic nature of the

defendants' improper notarial practice, a determination of the validity of all acknowledgments

published by defendants affecting Plaintiff's property, a determination of malice, a

determination of restitution as appropriate and a determination of the remedial measures

necessary to correct the public land records public land records for all.

159.      That it is impractical, repetitive and unnecessarily expensive for Plaintiff and others

similarly situated to prove these allegations individually, as the allegations complain of a

systemic and institutional practice.

# **MONCRIEF FACTS**

160.      Plaintiffs incorporate these allegations into the claim below as though fully set forth

herein.

161.      That the Moncrief facts are a typical example of the implementation of CHASE and

other defendants' business practices where the loan originator is WASHINGTON MUTUAL

BANK, F.A. ("WAMU"), a federal bank closed by the FDIC on September 25, 2008, and

CHASE'S use of the so-called "*magically appearing endorsement*".

30

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

162.     So as to save costs, CHASE perpetrates the illusion that it purchased WAMU originated MLNs from the FDIC, when in the vast majority of cases, is merely the loan servicer for MLNs that were sold and securitized by *prior to* WAMU's demise.

163.     Here, CHASE relies on the use of two sets of improperly notarized documents to allegedly create the illusion that it is the beneficiary entitled to appoint a new Trustee for the Moncrief Deed of Trust.

164.     Moncrief's only significant asset is his residence at 417 Sea Ridge Drive, La Jolla, CA 92307 (the "Moncrief Property").  On or about 7/20/2007, Plaintiff entered into a residential refinance loan with WASHINGTON MUTUAL BANK, F.A. for $4,900,000.00 secured by a deed of trust.

165.     Moncrief defaulted on the obligation and CHASE and other defendants caused a Notice of Default to be filed in the Official Records of the County of San Diego on October 29, 2009.

166.     On October 27, 2009, DEBRA BRIGNAC, purportedly as Vice President of CHASE executes a Substitution of Trustee which purports to appoint CALIFORNIA RECONVEYANCE COMPANY as the Trustee to the Moncrief Deed of Trust, attached as **EXHIBIT 11.**  That the Substitution of Trustee includes an acknowledgement executed by JESSICA ERIN SNEDDEN, a California Notary Commission #1858851 and was recorded in the San Diego county public land records on October 29, 2009.  That DEBRA BRIGNAC was *not* Assistant President of CHASE.  That BRIGNAC, SNEDDEN, DOE 5 and CALIFORNIA RECONVEYANCE COMPANY were each as agents and at the direction of CHASE.

167.     That the referenced Moncrief Substitution of Trustee is a fabricated and "photo-shopped" document created to support the illusion that BRIGNAC was a CHASE Vice President authorized as the true party in interest and therefore had standing to name a new trustee to the Moncrief Deed of Trust.

31

**FIRST AMENDED CLASS ACTION COMPLAINT**
***BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.***

168.     That SNEDDEN and DOE 5 have engaged in improper notarial acts in violation of California Notary laws:  that DOE 5 purported to act as a notary when he signed the Moncrief Substitution of Trustee, that SNEDDEN was not duly commissioned, that this document was not actually signed by SNEDDEN, that SNEDDEN did not properly acknowledge this document, that SNEDDEN did willfully fail to keep his notary seal under his direct and exclusive control, that SNEDDEN did not duly record this transaction in a sequential journal or keep said journal in a safe and secure place, that this document is not duly acknowledged by SNEDDEN.

169.     That CHASE and other defendants solicited, coerced and influenced DOE 5 and SNEDDEN and to engage in the aforementioned improper notarial acts when it knew these acts to be improper notarial acts.

170.     On August 6, 2010, Moncrief filed a Voluntary Petition under Chapter 11, Case number 10-14057-LT11 thereby enjoining the non-judicial foreclosure sale.  On January 20, 2011, Moncrief filed an Adversary Complaint against CHASE, # 3:11-ap-90025 and has objected to CHASE's claim as an alleged secured creditor.

171.     Again, CHASE and other defendants went to great length to create the illusion of standing.

172.     CHASE claims it has legal standing as the current owner of the note and is entitled to enforce the provisions of the MLN based on a copy of the Note that now includes an undated endorsement in blank allegedly executed by current CHASE employee Cynthia Riley on behalf of WAMU.  CHASE incorrectly assumes the Moncrief Note to be non-negotiable.  Oddly, when originally presented by CHASE in its proof of claim, said note contained *no*

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

*endorsement.* It is still unknown if current CHASE employee RILEY ever worked for WAMU or executed the endorsement before or after WAMU's demise.

173.     That Plaintiff intends pursue individual claims outside of this Class Action and does not seek a determination of his claims for Wrongful Foreclosure or the legal effect of improper notarization of foreclosure documents affecting Plaintiff's property.

174.     Rather, that Plaintiff seeks a determination of the scope of the systemic nature of the defendants' improper notarial practice, a determination of the validity of all acknowledgments published by defendants affecting Plaintiff's property, a determination of malice, a determination of restitution as appropriate and a determination of the remedial measures necessary to correct the public land records public land records for all.

175.     That it is impractical, repetitive and unnecessarily expensive for Plaintiff and others similarly situated to prove these allegations individually, as the allegations complain of a systemic and institutional practice.

## CLASS ACTION ALLEGATIONS

176.     Plaintiffs incorporate the allegations above in this claim as though fully set forth herein.

177.     Plaintiffs seeks a determination of the scope of the systemic nature of the defendants' improper notarial practice, a determination of the validity of all acknowledgments published by defendants affecting Plaintiff's property, a determination of malice, a determination of restitution as appropriate and a determination of the remedial measures necessary to correct the public land records public land records for all.

33

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

178.    That it is impractical, repetitive and unnecessarily expensive for Plaintiff and others similarly situated to prove these allegations individually, as the allegations complain of a systemic and institutional practice.

179.    As CHASE and other defendants are engaged in the malicious practice of systemically violating California and other state laws which forbid improper notarial acts, Class Plaintiffs file this First Amended Complaint as private attorney generals seeking declaratory relief, injunctive relief, restitution and damages.

180.    Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of the themselves and on the following Classes:

(1) All California real property owners whose property is allegedly encumbered by a Deed of Trust securing a Note in default owned or serviced by CHASE or its agents AND where CHASE or its agents has caused any document to be recorded in the public land records after January 1, 2008 which required an acknowledgment under California law.

(2) Excluded from the Class are defendants, and their affiliates, subsidiaries, current or former employees, officers, directors, agents, representatives, and their family members.

181.    Plaintiffs do not know the exact size or identities of the members of the proposed class, since such information is in the exclusive control of the Defendants.

182.    Industry statistics suggest that the national loan servicing market is currently estimated to be $7.846 trillion, of which California represents over 50%.  The top 10 loan servicers control over 78% of the Loan Servicing Market.

183.    CHASE is third among the largest servicers of residential mortgages in the United States, services a current portfolio of 8,300,000 residential mortgage loans worth $1.168Trillion and holds a Market Share of approximately 14.9% nationally.

**34**

FIRST AMENDED CLASS ACTION COMPLAINT

*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

184.     Based on industry data, 11.6% of the loans serviced by CHASE are currently past due and half of those are in some stage of foreclosure (7.5% were past due in 2008, to 12.5% in 2009, and 11.6% in 2010).  1 in 283 homes in California are currently in some stage of non-judicial foreclosure.  NDEX, CAL-WESTERN and CAL-RECON each play a crucial role in creating, executing, publishing recording and improperly notarizing thousands of foreclosure related documents.  A conservative estimate suggests that the Class size could approach 40,000 to 50,000 borrowers.

185.     Therefore, the proposed Class is so numerous that joinder of all members is impracticable.  Furthermore, it is impractical for individual Plaintiffs to individually attempt to discover the scope of CHASE and other defendants' violations of state notarial laws and would require repetitive efforts.

186.     The Class Plaintiffs do not intend to litigate their individual wrongful foreclosure cases here.  Instead the Plaintiffs seek appropriate restitution, judicial determinations injunctive and equitable remedies given CHASE and other defendants' institutionalization of a business practice that is based on the intentional solicitation, coercing and influence on individuals to commit improper notarial acts.

187.     Under these circumstances, a class action is superior to other methods for the fast and efficient adjudication of this controversy and to avoid the risk of disparate and inconsistent rulings in different courts.  A class action regarding the issues in this case does not create any problems of manageability.

188.     A pattern and practice of conduct by defendants exist in this case wherein common questions of fact and law predominate over any questions affecting only individual members including, but not limited to the following:

35

**FIRST AMENDED CLASS ACTION COMPLAINT**
***BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.***

a. Whether CHASE and other defendants have engaged in the *unlawful and systemic practice* of soliciting, coercing or influencing the performance of improper notarial acts, including the creation, execution and publication of improper acknowledgments, in violation of CA Government Code Section 8225 and other state laws;

b. Whether an out of state notarial acknowledgment executed in violation of other state's notary laws, is sufficient for purposes of recording in California under Civil Code Section 1189;

c. Whether the alleged creation, institution management and maintenance of the practice of systemically violating state notarial laws for profit rises to the level of malice or a reckless disregard of the rights of the Class members;

d. Whether the systemic practice of soliciting, coercing or influencing the performance of improper notarial acts so as to reduce the true cost of servicing defaulted loans constitutes *unfair competition;*

e. Whether members of the public are likely deceived by the systemic practice of soliciting, coercing or influencing the performance of improper notarial acts including the recording of improper acknowledgments in the public land records;

f. The determination that any improperly acknowledged documents shall not constitute *prima facie evidence* that said documents are the duly authorized act of the entity named in the instrument.

g. The determination of the appropriate restitution, judicial determinations, injunctive and equitable remedies;

h. The determination of a method for correcting and\or removing and\or purging improperly acknowledged documents from the public land records; and providing

36

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

proper notice to Class members, the affected public, bankruptcy courts, unlawful detainer courts, Superior Courts, Federal District Courts and title companies of the judicial determination as to each document;

    i.   The determination of the amount of restitution, costs and disgorgement appropriate for defendants' violation of Cal B&P §17200;

    j.   The determination of the amount of cost savings benefiting defendants from the anti-trust practices violating Cal B&P §17200;

    k.   Common questions of fact and law *do not include* the determination of the validly, accuracy or veracity of the content of foreclosure documents recorded in the public land records and determined to be improperly acknowledged.

189.    This is a matter of the important public policy because the fair treatment of distressed borrowers and respect for the integrity of public land records is a county, state and national policy priority.

190.    The improper notarial claims of the individual named Plaintiffs are typical of the claims of the Class and do not conflict with the interests of any other members of the Class.

191.    The individually named Plaintiffs will fairly and adequately protect the interests of the Class. They are committed to the vigorous prosecution of the Class' claims and have retained attorneys who are qualified to pursue this litigation.

192.    The putative class action meets the requirements of Federal Rules of Civil Procedure 23(a), 23(b) and/or 23(c).

193.    The nature of notice to the proposed class required and/or contemplated is the best practicable method possible and contemplated the defendant's list when disclosed would most

37

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

likely be media outlets, mailing to the property addresses affected by the filed foreclosures and internet and other general notices are contemplated to ensure notice.

194.     Defendants have acted or refused to act on grounds that apply generally to the Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

# CLAIMS

## FIRST COUNT
### Unlawful, Unfair and Deceptive Business Practices
### (Against All defendants and Does 1 through 10)

195.     Plaintiffs incorporate in this claim all of the allegations above as though set forth in full herein.

196.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

197.     That California's Unfair Competition Law (UCL) defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. Cal Bus & Prof Code §17200 et seq.

198.     That Defendants' standard operating procedure to solicit, coerce and influence improper notarial acts, knowing those acts to be improper, in furtherance of a broader scheme to process tens of thousands of California foreclosures at the lowest possible cost by systemically misrepresenting standing and the chain of title of securitized MLNs.

199.     That said broader scheme includes the crucial practice of improperly acknowledging and recording *after-the-fact*, *as-needed* Assignments, Substitutions of Trustee and Deeds

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

upon Trustee Sale.  Defendants file other foreclosure documents such as endorsements, allonges, Notices of Defaults and affidavits so as to create the *illusion* of valid mortgage transfers and standing in tens of thousands of foreclosure matters, bankruptcy cases and civil matters.  To the extent those documents are not improperly acknowledged, they are beyond the scope of this case.

200.      Plaintiffs' claims are by no means speculative but are supported by the findings of the Office of the Inspector General of HUD, the San Francisco assessor-recorder's office, other independent governmental agencies, media reports, whistleblowers and courts.

201.      As stated in the Consent Order entered into between CHASE and the United States Department of Treasury's Office of the Comptroller of Currency (the "OCC") on April 13, 2011, the Comptroller found that CHASE

> "(b) filed or caused to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary"

202.      That while the Consent Order provides for an agreement wherein CHASE agrees to take remedial measures to ensure that it implement procedures to remediate its unsafe and unsound banking practices, the Order does not limit Plaintiffs' right to a private cause of action for equitable relief including a purging of the public land records.

203.      That the "independent foreclosure review" included in the Consent Order and ending in July 2012 is also a wholly inadequate device. It requires that unsophisticated homeowners make a showing of "financial injury" but subject to no defined standard of review.  The allegedly "independent" auditors are chosen, controlled and influence by defendants notwithstanding assertions to the contrary.

39

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

204.     That the Consent Order does not constitute the Plaintiffs' sole remedy, especially for borrowers who have already lost their homes.  That the Consent Order does not address the defendants' criminal activity nor does it provide any equitable remedy to correct the public record.

205.     Whether Plaintiffs have suffered financial injury will vary greatly depending on individual circumstances and what type of document has been improperly acknowledged.  Whether a Trustee Deed upon Sale versus a Substitution of Trustee or an Assignment of Deed of Trust is improperly acknowledged, the damage to Class Members may range for minimal to extreme.

206.     Here, Plaintiffs do not seek damages for individual financial injury but equitable relief restitution for defendants' widespread pollution of public land records with improperly acknowledged foreclosure documents.

207.     The Office of the Comptroller of Currency has no jurisdiction to amend California criminal, California Notary Laws or in any way inhibit Plaintiffs' right to pursue this private cause of action.  Plaintiffs reserve the right to pursue claims based on the effect of improperly notarized documents but those issues need not be decided in this case.

**THE INSTITUTIONALIZATION OF THE IMPROPER NOTARY PRACTICE DEMONSTRATES MALICE AND A RECKLESS DISREGARD FOR THE RIGHTS OF PLAINTIFFS AND THE INTEGRITY OF THE PUBLIC LAND RECORDS**

208.     That by institutionalizing an improper notarial practice in the quest for profit, Defendants has demonstrated its actual malice towards Plaintiffs and those similarly situated.

**40**

FIRST AMENDED CLASS ACTION COMPLAINT

*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

209.     Those defendants are motivated by hatred and ill will toward this class of Plaintiffs and have demonstrated herein that it lacks any reasonable belief in the truth of matters asserted in tens of thousands of acknowledgements attached to tens of thousands of false and misleading foreclosure documents.

210.     Defendants have acted in reckless disregard of the rights of Plaintiffs, similarly situated homeowners, taxpayers and private investors in mortgage backed securities.

211.     The improper notarial practice is designed to *enhance the illusion* created by fabricated foreclosure documents, many which purport to transfer the rights to enforce the terms of tens of thousands of non-negotiable promissory notes (the "MLNs").

212.     The improper notarial practice is designed to *enhance* defendants' ability to play "hide-and-seek" with class Plaintiffs, debtors, judges, bankruptcy trustees, investors and other affected parties.  That the Pooling and Servicing Agreements of every private Mortgage Backed Security Trust ("MBST") serviced by Defendants contemplates no less than THREE true sales of each MLN from originator, to sponsor, to depositor and finally to the designated Trustee of the MBST (the "Chain of Title").

213.     That the cost of properly transferring a single MLN to a MBST through the contemplated "Chain of Title" is approximately $1,500.00.  That a typical MBST contemplates a pool of 5,000 MLNs. To save money, Defendants refuse to produce or lack access to the evidence of the actual transfers to MBSTs.  The "technology" cost, processing and legal fees associated with proving standing of the true "chain of title" is cost prohibitive given defendants' volume of bankruptcy and litigation matters.  Defendants misrepresent the "chain of title"

**41**

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

through the use of Assignments and other foreclosure documents by creating, executing and

improperly acknowledging fabricated "photo-shopped" foreclosure documents.

214.      That defendants' network of attorneys is financially rewarded based on the speed in

which the attorneys complete non-judicial foreclosures, bankruptcy and litigation matters.  Said

network attorneys incur a performance penalty based on the amount of correspondence with

defendants and the amount of evidence the attorney's require to "prove-up" a matter.

Defendants impose "technology fees" through a complex web based interface platform for

correspondence, access and copies of the documentary evidence required in a matter.  Such a

practice relies on the speed and deception, the implementation of which demonstrates malice

and a reckless disregard of Plaintiffs' rights.

215.      Most egregiously, the network attorneys utilize the business practice to obtain attorney

fees awards from by the bankruptcy judges ranging from $600-$1000 for each successful

motion for relief of stay and allowed proofs of claim.  Said awards allow CHASE to pad its

claims and add fees to the loan balances arrearage claims of class members.

216.      Those defendants' manufactured and improperly acknowledged evidence is so

persuasive that 95% of motions for relief of stay are granted without opposition and over 95%

of CHASE's Proofs of Claims are allowed.

217.      That the systemic use of the fabricated evidence has a chilling effect on class debtors

and their attorneys.  Said business practice discourages bankruptcy players from offering

objections or from questioning the validity of CHASE's false claims based on standing.

218.      That the improper acknowledgement of these manufactured documents is *the* crucial

element in creating the illusion of the legitimacy of the foreclosure documents.

**42**

**FIRST AMENDED CLASS ACTION COMPLAINT**

*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

219.     Those defendants employ the improper notary practice to *support* the broader business model of manufacturing and publishing foreclosure documents *as needed* and without regard to the truth.

## DEFENDANTS' IMPROPER NOTARZATION PRACTICE IS UNLAWFUL

220.     Those defendants have knowingly engaged in the systemic solicitation, coercion and influence of individuals to commit improper notarial acts related to the execution of acknowledgments of documents created in contemplation in non-judicial foreclosure in violation of <u>CA Government Code Section 8225</u> and other state laws.

221.     Those defendants know that said notarial acts are improper, deceptive and fraudulent but solicit, coerce and influence such improper acts as part of a broader business model that also incorporates the creation and publication of fabricated, misleading inaccurate and fraudulent foreclosure documents in various incarnations described herein.

222.     Defendants manufacture and publish chain of title transfer evidence and other foreclosure documents on demand so as to falsely prove standing in thousands of matters.

223.     That the utilization of this broader business model is driven by defendants' relentless pursuit of cost savings.  The broader business model results in widespread deception of Plaintiffs, borrowers, other creditors, bankruptcy courts, bankruptcy trustees, title companies, Federal courts, Superior courts, Unlawful Detainer courts and mortgage trust investors.

224.     That the effective utilization of the broader model begins with the offensive practice of institutionalizing a culture and practice of improper acknowledgment of those foreclosure documents with are then published in land records in contemplation of non-judicial foreclosure.

43

**FIRST AMENDED CLASS ACTION COMPLAINT**
***BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.***

225.     Beyond their contemplated use within the non-judicial foreclosure process, the improper acknowledgements attached to foreclosure documents constitute *prima facie evidence* that the document is the duly authorized act of the entity named in the instrument.

226.     That where a Plaintiff files bankruptcy or attempt to litigate issues related to debt, foreclosure or title, defendants assert the improperly acknowledged documents as prima facie evidence that the subject document is duly authorized.

227.     That in reality, no such presumption should exist.  While the improperly notarized documents are published in contemplation of non-judicial foreclosure, but they have a direct, negative and burdensome effect Plaintiff's success in bankruptcy and litigation when they are subsequently used in a deceptive manner.

228.     That the practice of soliciting, coercing and influencing improper notarial acts is the equally offensive as defendants' broader business model of creating Assignments and other foreclosure documents that are inaccurate, fraudulent, not based on personal knowledge and not what the purport to be.  But the improper notarial practice is much more egregious as it is based on the corruption of the Notary office.


**DEFENDANTS' IMPROPER NOTARZATION PRACTICE IS UNFAIR**

229.     That the improper notarization practice is implemented for the ultimate purpose of maximizing Defendants' profit through the reduction of due diligence and foreclosure processing costs.

230.     Central to this *unfair* practice is the creation, execution and publication of tens of thousands of improperly acknowledged foreclosure related documents in the public land records since 2008.  These illegal short cuts result in substantial cost savings.

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

231.    The Relevant Market is defined as residential loan servicing.  The national loan servicing market is currently estimated to be $7.846Trillion, with the top 10 loan servicers control over 78% of the Market.  Defendant CHASE is third among the largest servicers of residential mortgages in the United States, services a current portfolio of 8,300,000 residential and holds a Market Share of approximately 14.9% nationally.

232.    That Defendants realize a tangible, measurable cost benefit from this improper notary practice which results in a competitive advantage over loan servicing companies in the Relevant Market who do not engage in soliciting, coercing and influencing improper notarial acts.

233.    That the improper notary practice facilitates quick and inexpensive non-judicial foreclosures of California real property without any regard for the law or the rights of the affected Class members.  The Defendants' improper notary practices cause increased productivity, lower processing costs, lower litigation expenses, lower attorney fees and increased foreclosure related revenue.  The presumptive evidentiary value of these improperly acknowledged documents has a chilling effect on borrowers' objections, litigation and opposition which results in greater cost savings for defendants.

234.    One court has said that an unfair business practice is one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" (People v. Casa Blanca Convalescent Homes, Inc. (1984) 159 Cal. App. 3d 509, 530 [206 Cal. Rptr. 164, 53 A.L.R.4th 661]).  While no clear test to determine what constitutes *unfair* business practice has been established in California, the improper notary practice is unfair by this definition.

**45**

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

235.     That another court has stated that to determine whether a business practice is unfair, courts must "'weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . .' "(State *Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal. App. 4th 1093, 1104 [53 Cal. Rptr. 2d 229]*.)  The improper notary practice is unfair by this definition.

236.     The only utility for Defendants is its own cost savings advantage over competitors. Rather than treat the residential foreclosure process with the utmost care and strict liability, Defendants maliciously utilizes the improper notary practice in combination with the widespread use of false statements, misrepresentations and deception just to save money.

237.     That since the foreclosure crisis began in 2008, this institutional business practice of violating the Notary laws and professional standards has lead to increased profits through the elimination of the otherwise time consuming and expensive process of ensuring proper acknowledgement of foreclosure documents.

238.     That in the context of this national mortgage crisis, a massive taxpayer bailout of Defendant CHASE and the general devastation caused by home foreclosures, the alleged business practice is immoral, unethical, oppressive, unscrupulous *and* substantially injurious to *all* consumers.  That whether a consumer is a homeowner in financial distress or not, there is a common interest in preserving the integrity of our public land records and court system.

## DEFENDANTS' IMPROPER NOTARZATION PRACTICE IS DECEPTIVE

239.     Central to this *deceptive* business practice is the creation, execution and publication of tens of thousands of improperly acknowledged foreclosure related documents in the public land records since 2008.

**46**

FIRST AMENDED CLASS ACTION COMPLAINT
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

240.     That the improper notary practice of soliciting, coercing and influencing improper notarial acts is *deceptive* by definition but not conducted in isolation.  While no longer the subject of this lawsuit, the false and misleading *content* contained in the foreclosure documents is equally oppressive and demonstrative of Defendants' blatant disregard for the rights of homeowners in financial distress.

241.     Notwithstanding that these and other foreclosure documents contain false assertions as to ownership of notes, transfers of notes, transfers of deeds of trusts and transfers of the power to enforce the terms of California MLNs, only the improper notary practice is the subject of this lawsuit.

242.     The practice of creating improper acknowledgments restricts borrowers from challenging the veracity of a document's assertions and the validity of any non-judicial foreclosure sale.

243.     The *illusionary* certificates of acknowledgement attached to an executed instrument, such as a Substitution of Trustee or an Assignment, is *prima facie evidence* that the document is the duly authorized act of the entity named in the instrument.  The deceptive effect of improper acknowledgement cascades throughout bankruptcy and civil cases, in addition to non-judicial foreclosures.

244.     Therefore, even where the party who executes a document lacks personal knowledge or any agency relationship with the party entitled to enforce the terms of an MLN, an *illusionary* acknowledgement wrongfully obstructs borrowers from making legitimate challenges to the validity of the foreclosure document.

245.     That defendants have processed tens of thousands of non-judicial foreclosure proceedings based on the purported validity of improperly notarized documents in addition to

47

**FIRST AMENDED CLASS ACTION COMPLAINT**
***BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.***

failing to ensure that either the promissory note of deed of trust were properly endorsed or assigned or in possession of the appropriate party at the appropriate time.

246.     That while the content and attestations contained in the foreclosure documents are themselves false, misleading and deceptive, it is the systemic use of these documents and defendants' solicitation, coercion and influence of individuals to commit improper notarial acts that is the subject of this action.

247.     That the public, including Plaintiffs, Courts, bankruptcy trustees, new creditors, credit reporting agencies, potential buyers and title insurance companies are likely to be *deceived* by the improperly acknowledged foreclosure documents filed in the public land records, notwithstanding the truth of the matters asserted in those documents.

248.     That defendants have generated tens of millions of dollars in revenue through premature or unjustified foreclosure fees, attorney fees, notary fees, insurance fees, Chapter 13 trustee distributions, broker service fees, late fees and servicing fees charged to borrowers.

249.     Those defendants have wrongfully foreclosed and prevailed in bankruptcy motions, Unlawful Detainer cases, Superior Court cases and Federal cases by offering improperly notarized foreclosure documents as self-authenticating and presumptively valid evidence.

250.     That until the public record is corrected, there is no reason to expect that these unjust results accruing from defendants' improper notarization practice will ever cease.

251.     As a proximate result of defendants' conduct, Plaintiffs have each suffered injury in fact and will continue to suffer until this matter is resolved.

252.     The improperly acknowledged documents are used against Plaintiffs' interest to support the illusion of valid transfers of rights in MLNs including the right to foreclose, to name trustees of deeds of trusts and to grant title in real property to buyers at non-judicial

48

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

foreclosure sales. The use of said documents has caused Plaintiffs collectively to suffer actual injury, incur improper loan servicing fees, increased loan charges, a loss of personal rights, and loss of property rights, decreased property values, lost costs, lost time, and increased attorney fees combating the effect and cure the widespread publication of improperly acknowledged documents.

253.     The improperly acknowledged documents, while published in contemplation of non-judicial foreclosure, are used against Plaintiffs' interests in bankruptcy cases, federal court cases, civil court cases and unlawful detainer cases to support the illusion of valid transfers of rights and the *prima facie* evidence of the validity of said documents.

254.     The improperly acknowledged documents are used with such frequency and abundance so as to degrade the integrity of the public land records system, the office of notaries and our court system. As such, said practice is causing irreparable injury to members of the general public.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, as follows:

a.   That the Court determine that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiffs be certified as class representative and Plaintiffs' counsel be appointed as counsel for the Class.

**49**

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*

b. A determination whether defendant's improper notarial business practices, related actions, failures to act, representations and assertions constitute violations of California Business & Professions Code §17200;

c. An order compelling defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition, related to the filing of improperly acknowledged documents in the public land records in violations of § 17200, including, but not limited to, the violations alleged herein.

d. An determination of the scope of the nature and seriousness of the alleged misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities and net worth.

e. A determination of as to which the scope of the nature and seriousness of the alleged misconduct, the number of violations, the specific identification of each violation, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities and net worth.

f. A determination of the amount of cost savings benefiting defendants from the deceptive practices violating Cal B&P §17200 in this context;

g. A determination of the amount of restitution and disgorgement of profits appropriate for violations of Cal B&P §17200 in this context;

h. For an order requiring defendants to record in the public land records a "Notice of Improperly Acknowledged Document", or such similar Notice as the Court deems

50

**FIRST AMENDED CLASS ACTION COMPLAINT**
*BAKENIE, et al. v JPMORGAN CHASE BANK, N.A.*