Joseph Arthur Roberts, State Bar No. 156180
LAW OFFICE OF J. ARTHUR ROBERTS
3345 Newport Blvd., Suite 213
Newport Beach, CA 92663
Telephone: (949) 675-9900
Facsimile: (888) 989-9309
Email: Joe@JarLegal.com
Attorney for Plaintiffs and all
others similarly situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST MICHAEL BAKENIE, an individual; STEVEN MICHAEL WHITCOMB, an individual; FREDDY ESTRELLA, an individual; JENNIFER E. CARILLO-THOMAS an individual; and GEOFFREY MONCRIEF, an individual; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., NDEX WEST, LLC, a Delaware limited liability company; CALIFORNIA RECONVEYANCE COMPANY, a California Corporation; CAL WESTERN RECONVEYANCE CORPORATION, a California Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. **SACV12-0060-JVS (MLGx)** <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S AND DEFENDANT CALIFORNIA RECONVEYANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT PURSUANT TO F. R. C. P. 12(B)(1) AND 12(B)(6)** <br><br> REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY HEREWITH <br><br> Hearing Date: August 6, 20912 <br> Time: 1:30 p.m. <br> Place: Courtroom 10C <br> Judge: Hon. James Selna |

Plaintiffs, through their counsel, respectfully submit these Points and Authorities in Opposition to Defendants' Motion to Dismiss Pursuant to FRCP and 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), failure to state a claim upon which relief could be granted.

i

## INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") seeks relief for Unfair Competition, codified in California Business and Professions Code sections 17200, et seq. ("UCL"), for Defendants' illegal notarial practices, resulting in the creation of potentially tens of thousands of mortgage-related documents acknowledged in contravention of California law, and the consequent mass pollution of California public land records by these improperly acknowledged documents.

Defendants submit their Motion to Dismiss the FAC on two putative grounds: lack of subject matter jurisdiction (Fed. R. Civ. Proc. 12(b)(1)), and failure to state a claim (Fed. R. Civ. Proc. 12(b)(6)).   As shown below, Plaintiffs' FAC sufficiently states a claim upon which relief may be granted, and the instant Court has subject matter jurisdiction over Plaintiffs' claims.

ii

# TABLE OF CONTENTS

I. FACTS ............................................................................................................................ 1

A) Defendants' use of illegal notarial practices and procedures has caused widespread pollution of California public land records of potentially defective documents. .......................................... 2

B) Defendants' use of illegal notarial practices violates California unfair competition laws and creates a potentially monopolistic situation ...................................................................... 3

C) The April 2011 Consent Order, drafted by the Office of the Comptroller of the Currency and stipulated to by Defendants, attempts to remedy general improper foreclosure practices by Defendants but does not address Plaintiffs' specific claims. ............................................... 4

D) Plaintiffs seek to terminate the illegal and unfair practices by Defendants as well as compel Defendants to remedy the current pollution of public land records. ...................................... 6

E) Plaintiffs necessarily brought this action separate from other pending actions. ...................... 7

II. STANDARD OF REVIEW .......................................................................................... 8

III. ARGUMENT ............................................................................................................... 9

A) The Court's Jurisdiction Over the Instant Matter Is Not Precluded By the April 2011 Consent Order, Nor Is the Court Required to Abstain From Exercising Jurisdiction. .................................... 9

1) The Consent Order Does Not Address Defendants' Pervasive Pollution of Public Land Records and Does Not Bar Plaintiffs' Action Pertaining Specifically to Defendants' Illegal Notarial Practices. .................................................................................... 10

a) The Consent Order Does Not Contemplate the Pollution of Public Land Records, Nor Provide the Exclusive Remedy Therefor. ......................................................... 10

b) Neither Private Actions Nor Actions Based on Improper Notarial Services Are Precluded by the Order and the Order Therefore Does Not Preclude Subject Matter Jurisdiction Over This Matter ...................................................................... 10

c) The Consent Order Explicitly Allows for Actions Such as That Brought by Plaintiffs, and Therefore Does Not Preclude Subject Matter Jurisdiction by the District Court. ............... 12

d) Section 1818(i) Does Not Bar Federal Subject Matter Jurisdiction Over This Matter Because, Even if the Consent Order Addressed the Issues Raised by the FAC, the Remedies

iii

---

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

Sought By Plaintiffs Do Not Interfere With Enforcement of the Order .......................................... 13

2) The Doctrines of Primary Jurisdiction and Equitable Abstention Do Not Preclude the Court from Exercising Jurisdiction Over Plaintiffs' Claims.................................................................... 17

a) Application of the Factors for the Primary Jurisdiction Doctrine Yield a Finding that the Court Should Retain  Jurisdiction Over Plaintiffs' Suit............................................................. 17

b)  Application of the Doctrine of Equitable Abstention is Inappropriate in the Instant Case..................................................................................................................................... 18

B) PLAINTIFFS' FAC STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED........... 19

1) All Plaintiffs Have Alleged Economic Injury and Therefore Have Standing Under the UCL.......................................................................................................................................... 19

2) Plaintiff Whitcomb's Property Been Released by the Trustee in his Bankruptcy Matter ..... 20

3) The California Litigation Privilege Does Not Apply to the Instant Litigation, and Therefore Does Not Bar Plaintiffs Bakenie, Whitcomb and Estrella's UCL Claims....................................... 21

4) Plaintiffs Estrella and Moncrief Have Properly Alleged UCL Claims in This Action.. ....... 23

5) Plaintiff Carillo-Thomas's UCL Claim is Not Barred Under the Doctrine of Res Judicata.. 24

6) Defendant NDeX's Joinder Does State Grounds Upon Which Dismissal is Appropriate.. .. 25

IV. CONCLUSION............................................................................................................................. 25

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1

**TABLE OF AUTHORITIES**

2  **Federal Cases**

3  Birdsong v. Apple, Inc., 590 F.3d 955 (9th Cir. 2009) ................................................ 20

4  Broam v. Bogan, 320 F.3d 1023 (9th Cir. 2003) ......................................................... 8

5  Celotex Corp. v. Edwards, 514 U.S. 300 (1995) ........................................................ 23

6  Davis v. United States, 597 F3d 646 (5th Cir. 2009) ................................................... 9

7  Elam v. Kansas City Southern Ry. Co., 635 F.3d 796 (5th Cir. 2011) ........................... 18

8  Geron v. Schulman (In re Manshul Constr. Corp.), 225 B.R. 41 (S.D.N.Y. 1998) ............ 23

9  Gilligan v. Jamco Dev. Corp., 108 F.3d 246 (9th Cir.1997) .......................................... 8

10 Grieve v. Tamerin, 269 F3d 149 (2nd Cir. 2001) ....................................................... 24

11 Illinois Bell Tel. Co., Inc. v. Global NAPs Ill., Inc. 551 F.3d 587, 595 (7th Cir. 2008) ........ 18

12 Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001) .............................................. 8

13 Marilao v. McDonald's Corp., 632 F.Supp.2d 1008 (S.D.Cal. 2009) .............................. 20

14 Pareto v. F.D.I.C., 139 F.3d 696 (9th Cir.1998) ......................................................... 8

15 Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480 (9th Cir.1995) ................................ 8

16 Reiter v. Cooper, 507 US 258 (1993) ....................................................................... 18

17 Rymes Heating Oils, Inc., v. Springfield Terminal Ry. Co. 358 F.3d 82 (1st Cir. 2004) ......... 18

18 Sprewell v. Golden State Warriors, 266 F.3d 979 (9th Cir. 2001) ................................... 8

19 Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc. 307 F.3d 775 (9th Cir. 2002) ...... 18

20 Transit Exp., Inc. v. Ettinger, 246 F.3d 1018 (7th Cir. 2001) ......................................... 9

21 United States v. City of Redwood City, 640 F.2d 963 (9th Cir.1981) ................................. 8

22 United States v. City of Redwood, 640 F.2d 963 (9th Cir. 1981) ..................................... 8

23 United States v. Culliton 328 F.3d 1074 (9th Cir. 2003) .............................................. 18

24 Wehlage v. EmpRes Healthcare, Inc., 791 F.Supp.2d 774 (N.D.Cal. 2011) ...................... 19

25

26 **Federal Statutes**

27 12 U.S.C. § 1818 ............................................................................... 9, 13, 14, 15

28 28 U.S.C. § 1334 ......................................................................................... 7

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

28 U.S.C. § 157 .................................................................................................. 7

**California Cases**

Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal.4th 1232 (2007) ................................ 21

Desert Healthcare Dist. v. PacifiCare FHP, Inc., 94 Cal.App.4th 781 (2001).................................... 19

Fares v. Morrison, 54 Cal.App.2d 773 (1942) .................................................................. 2

In re Tobacco II Cases, 46 Cal.4th 298 (2009) ................................................................. 20

Kwikset Corp. v. Superior Court, 51 Cal.4th 310 (2011) ........................................................ 20

Sanborn v. Chronicle Pub. Co., 18 Cal.3d 406 (1976) .......................................................... 22

Weinstat v. Dentsply Intern., Inc., 180 Cal.App.4th 1213 (2010) ............................................... 20

**California Statutes**

Business & Professions Code §§17200, et seq ("UCL") ...................................................... passim

Business & Professions Code §17204 .......................................................................... 19

Business & Professions Code § 17203 ......................................................................... 20

Civil Code §47 .......................................................................................... 21, 22

Civil Code § 2934a ........................................................................................... 2

Government Code §1190 ........................................................................................ 2

Government Code § 8214.2 ..................................................................................... 6

Government Code § 8225 ....................................................................................... 1

Government Code § 8227.1 ..................................................................................... 6

Government Code § 8227.2 ..................................................................................... 6

Penal Code § 115.5 ........................................................................................... 6

**Federal Rules**

Federal Rule of Civil Procedure 8(a)(2) ..................................................................... 8

Federal Rules of Civil Procedure 12(b)(1)................................................................... 8

Federal Rules of Civil Procedure 12(b)(6)................................................................... 8

vi

Federal Rules of Civil Procedure 15(a)...................................................................... 8

Federal Rules of Civil Procedure 23 ....................................................................... 24

**Treatises**

Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1216 (1990).................... 8

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

# I. FACTS

Plaintiffs' FAC seeks equitable relief arising from Defendants' widespread and systematic violation of California law including, *inter alia*, California Government Code section 8225[1], resulting in the existence of tens of thousands of improperly acknowledged mortgage-related documents being lodged within California's public land records.   (FAC ¶4.)   Said documents are a product of a *institutionalized default servicing practice* that influences, coerces and solicits individuals to engage in improper notarial acts.   Said business practice has been intentionally implemented as substantial cost savings device that relies on the systemic violation and corruption of California notary law and professional standards.   Defendants receive a substantial economic benefit which provides them with an unfair competitive advantage over legitimate default servicing competitors.   Plaintiffs, and those similarly situated, resultedly suffer, and will continue to suffer, varying economical, social and legal consequences.   Additionally, Defendants have harmed, and continue to harm, the integrity of the California public land records system.   Defendants' improper notarial practice business model is an assault on California property rights notwithstanding Defendants' potential right to enforce the terms of an individual Note and Deed of Trust.

Said documents now pollute the California county land records and will continue to do so into the foreseeable future unless equitable relief is granted.   Specifically, Plaintiffs believe that these documents were acknowledged by non-notaries, outside the presence of the signers, without verification of the signer's identification, and/or without proper recordation in a sequential notary journal all in violation of California notary laws and professional standards. (FAC ¶¶34, 38, 39.) Moreover, Plaintiffs are informed that Defendants regularly engage in the soliciting, coercing and influencing of these improper notarial acts, and have in fact *institutionalized* these practices.   (FAC ¶¶33, 35, 42, 43, 198.)   The incorporation and institutionalization of influencing illegal notarial acts is the *cost savings center piece* of a factory-like foreclosure processing practice. As such, Plaintiffs

---

[1] California Government Code Section 8225 states in relevant part, "(a) Any person who solicits, coerces, or in any manner influences a notary public to perform an improper notarial act knowing that act to be an improper notarial act, including any act required of a notary public under Section 8206, shall be guilty of a misdemeanor."

1

believe and thereon allege that the majority of these documents were also created or mass manufactured on an after-the-fact, as needed basis in contemplation of California non-judicial foreclosures, were executed by agents of Defendants who lacked both personal knowledge as to the facts asserted in each document and any agency relationship to the true party entitled to enforce the terms of the relevant residential mortgage loans.  (FAC ¶¶32, 199.)   All of these allegations are supported by findings of the Office of the Inspector General of HUD, the San Francisco assessor-recorder's office, other independent governmental agencies, media reports, whistleblowers and courts. (FAC ¶39; see also March 12, 2012 "JP Morgan Chase Bank N.A. Foreclosure and Claims Process Review" Memorandum of Review issued by the Office of the Inspector General of the U.S. Housing and Urban Development, a copy of which is attached to Plaintiffs' Request for Judicial Notice ("RJN"), filed concurrently herewith,  as Exhibit 1.)

Plaintiffs believe that these illegally acknowledged documents, which include (but are not limited to) Assignments of Deeds of Trust, Substitutions of Trustees, Reconveyances of Deeds of Trust and Deed Upon Trustee Sale[2]:   are indicative of the extensive, illegal notarial practices and procedures used by Defendants; that potentially tens of thousands of similar documents have been acknowledged in violation of California law, and; that these illegitimate documents currently plague the California public land records and will do so indefinitely unless remedial action is taken.  (FAC ¶¶181-184.)

**A) Defendants' use of illegal notarial practices and procedures has caused widespread pollution of California public land records with improperly acknowledged documents, many of which are also inaccurate or forged.**

As a result of Defendants' illegal acts, tens of thousands of documents with improper or photo-shopped acknowledgements are now lodged in California's public land records.  (FAC ¶¶37, 222.)  Be that as it may, *Plaintiffs do not seek to litigate the truth or validity of each document* but only the validity of the notarial acknowledgement of the product of this business practice.    These

---

[2] Plaintiffs' FAC identifies specific mortgage related documents which Plaintiffs believe were the product of the aforementioned violative practices: Assignment of Deed of Trust (with respect to Plaintiffs Bakenie (¶¶53-58), Whitcomb (¶¶81-85, 89-94), Estrella (¶ ¶104-109) and Carillo-Thomas (¶ ¶136-141));  Substitution of Trustee (with respect to Plaintiffs Bakenie (¶¶59-64), Whitcomb (¶¶76-80), Estrella (¶¶110-115), Carillo-Thomas (¶ ¶142-147) and Moncrief (¶ ¶166-169)); and Deed Upon Trustee Sale (with respect to Plaintiff Carillo-Thomas (¶ ¶150-153)).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1   acknowledgements confer a *prima facie* presumption that the acknowledged document is the duly

2   authorized act of the named entity, and restricts any individuals (including borrowers), now or in the

3   future, from challenging the veracity and authenticity of a document and its contents.[3] The affect of

4   the improper acknowledgment is an issue left to Foreclosure Trustee as well as Bankruptcy, Superior

5   Court and District Courts Judges on an individual case basis.   It is inequitable to allow Defendants to

6   rely and hide behind *prima facie* presumption that accompanies thousands of improperly

7   acknowledged documents generated from this illegal business practice.

8          The effect of the improper acknowledgement cascades throughout the system and limits parties

9   from questioning the validity of the documents, thereby allowing Defendants to sell properties at

10  foreclosure sale, prevail in foreclosure and bankruptcy actions, unlawful detainer actions and other

11  proceedings by creating the illusion of standing with regard to enforcement of rights arising from the

12  documents.  (FAC ¶¶217, 243, 249.)  The illusion is supported by the mass production and use of

13  improperly notarized documents.   For instance, when a homeowner files for bankruptcy and is in

14  default on his or her mortgage, Defendants, using improperly acknowledged documents such as

15  Assignments and Trustee Substitutions, request a motion for relief of stay from the bankruptcy court,

16  thereby allowing commencement or continuance of foreclosure.    Not only are the documents

17  improperly acknowledged, but Plaintiffs believe that many of these documents are actually drafted or

18  created by Defendants on an as-needed basis, and are manufactured without regard to the truth. (FAC

19  ¶219, 246, 247.)

20         Other negative effects derive from these improperly acknowledged documents.  For example,

21  under the unambiguous terms of Civil Code section 2934a(a)(4), the recording of a substitution of

22  trustee transfers to the new trustee the exclusive power to conduct a trustee's sale and, other than by

23  recording a further substitution, there are no other statutory means by which the effect of a substitution

24  can be avoided.   These improperly acknowledged documents not only result in, e.g., improper

25  foreclosures and trustee sales, but follow the properties which are the subject of said documents, with

26

27  [3] Cal. Civ. Cod. §1190; see also *Fares v. Morrison* 54 Cal.App.2d 773 (1942) (acknowledgment of deed and certification
    thereof by notary constituted prima facie evidence of execution of deed and entitled it to be read into record without further

28  proof).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    the result being the extension of a potentially clouded chain of title.  (FAC ¶213.) These improperly

2    acknowledged documents include *reconveyances of deeds of trust* executed after an obligation has

3    been paid off which brings into question issues of good title.  The affect of this business practice will

4    be felt for years if not remediated.  As other borrowers fall into default and where Plaintiffs seek to pay

5    off these deeds of trust, these improperly notarized documents will remain in the public record.  The

6    public, Courts, potential creditors and buyers, attorneys, judges, bankruptcy trustees, title insurance

7    companies therefore rely on these documents to their potential detriment.  (FAC ¶247.)  Further, these

8    questionable assignments, reconveyances, and trustee substitutions and trustee deeds cause uncertainty

9    for investors of securitized mortgages.  (FAC ¶¶212, 213.)  Said illegal business practice criminally

10   undermines the protections offered by California notary law, assaults on the integrity of the California

11   land records system and degrades California property rights.

12       As such, this case is about the institutionalization of illegal notary practices and the degradation

13   of the integrity of the California public land records by Defendants for profit. This case is not about the

14   ultimate validity of individual non-judicial foreclosures.  Defendants' institutionalized use of illegal

15   notarial practices has resulted in the existence of tens of thousands of improperly acknowledged

16   documents, causing significant degradation of public land records, and therefore irreparable injury to

17   the public at large. (FAC  ¶254.)

18       **B) Defendants' use of illegal notarial practices violates California Unfair Competition**

19   **Laws and gives rise to potentially monopolistic circumstances.**

20       Defendants regularly engage in the practice of improperly acknowledging and recording after-

21   the-fact, as-needed Assignments, Substitutions of Trustee, Reconveyances and Deeds upon Trustee

22   Sale, as well as other foreclosure documents such as endorsements, allonges, Notices of Defaults and

23   affidavits for two main reasons: to create the illusion of valid mortgage transfers, and therefore the

24   illusion of standing in regard to foreclosure matters, bankruptcy cases and civil matters (FAC ¶¶25,

25   199, 221), and; to save themselves millions of dollars in processing costs, by implementation of these

26   cost-effective "robo-signing" techniques (FAC ¶¶33, 37, 41, 223).   Central to this practice is the cost

27   savings advantage gained by Defendants by disregarding Notary Laws and influencing others to do the

28   same.

1    This practice creates unfair competition both for the fact that the significant costs savings

2    associated with disregarding Notary Laws, in addition to robo-signing, gives Defendant Chase an

3    illegal competitive edge over its legitimate competitors.   Use of illegal notary practices assists in

4    conferring standing upon Chase to assert property interests where it might not otherwise be entitled to

5    do so in a cost effective manner, thereby enabling Defendants to enforce the terms of tens of thousands

6    of non-negotiable promissory notes in their favor at a reduced cost.

7    As to the illegal Notary practice, because these documents appear to be properly

8    acknowledged, the documents therefore constitute *prima facie* evidence of their contents and validity,

9    and parties are largely restricted from offering objections or questioning the validity of the false

10   claims.   (FAC ¶¶27, 244.)   Legal costs are reduced where a borrower objects to a non-judicial

11   foreclosure trustee's standing, files a lawsuit or files a bankruptcy.   The documents are presumed to be

12   valid.  As a result, **95%** of bankruptcy motions for relief of stay are granted without opposition.  (FAC

13   ¶¶216, 217.)  Similar results occur in other Courts as the legal process is short circuited by the apparent

14   validity of the acknowledgments.   Plaintiffs are informed that Defendants have wrongfully foreclosed

15   and prevailed in bankruptcy motions, unlawful detainers, and civil cases by offering improperly

16   notarized foreclosure documents as self-authenticating and presumptively valid evidence.   (FAC

17   ¶249.)

18   As to the cost savings, beginning in 2008, Defendants systematic practice of violating notary

19   laws has lead to increased profits through elimination of the otherwise time consuming and expensive

20   process of ensuring proper acknowledgement of foreclosure documents.  (FAC ¶237.)  Defendants'

21   improper notary practices have therefore resulted in increased productivity and lower processing costs,

22   as well as lower litigation expenses (due to the fact parties are limited from disputing the validity of the

23   acknowledged documents), lower attorney fees and increased foreclosure-related revenue, and have

24   consequently given Defendants a competitive advantage over loan servicing companies who do *not*

25   engage in soliciting, coercing and influencing improper notarial acts. (FAC ¶¶232, 233.) As noted in

26   the FAC, Defendant Chase is third among the largest servicers of residential mortgages in the United

27   States, and services a current portfolio of 8,300,000, comprising approximately 14.9% of the national

28   residential loan servicing market.   (FAC ¶¶183, 231.)   If allowed to continue, this competitive

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    advantage creates a danger of a monopolistic hold over the mortgage market by Defendant Chase.

2    **C) The April 2011 Consent Order, drafted by the Office of the Comptroller of the**

3    **Currency and stipulated to by Defendants, attempts to remedy general improper foreclosure**

4    **practices by Defendants but does not address Plaintiffs' specific California Notary based claims.**

5    Defendants seek dismissal of Plaintiffs' claims largely because of a Consent Order between

6    Chase and the Office of the Comptroller of the Currency (the "OCC") on April 13, 2011 (the "Consent

7    Order" or "Order"; Exhibit A to Defendants' RJN).  Defendants aver that the Order encompasses the

8    issues raised in Plaintiffs' FAC and that it, in combination with federal law, precludes the instant Court

9    from exercising jurisdiction over Plaintiffs' claims.  However, as detailed more fully below, the Order

10   does not in fact address Plaintiffs' claims and does not, in any event, preclude private action against

11   Defendants on any issues, whether addressed within the Order or not.

12   The twenty-seven page Consent Order is comprised of thirteen Articles, most of which

13   mandate Defendants to prepare and submit to the OCC various reports and proposed procedures for the

14   implementation of remedial measures in regard to foreclosure practices.  The Order is by and large a

15   *prospective* order which attempts to reign in Defendants' actions in regard to "certain deficiencies and

16   unsafe or unsound practices in residential mortgage servicing." (Order, page 1, first para.).   The

17   Articles mandate formulation of new or enhanced procedures designed so as to reduce the deficiencies

18   and unsound practices of default servicing *going forward*.   The Consent Order only addresses

19   foreclosures in 2009 and 2010.  The Order does not address violations of the California criminal law,

20   unfair competition affects, anti-trust affects, or the issue of recompense for liabilities arising from these

21   a systemic violation of California specific notary laws and legal presumptions.  Instead, the Order

22   focuses only on correcting deficiencies and unsound banking practices.  Nor does the Order address

23   the issue of the endemic pollution of California public records, let alone provide a means of redressing

24   the problem or its affects on Plaintiffs, the public records system or the validity of property and

25   evidence rights.

26   Of the above, only Article VII requires *any* external remedial actions by Defendants; it is also the

27   only section which provides any compensatory relief for aggrieved homeowners.  Article VII requires a

28   review of a *sample* of pending residential foreclosure actions or proceedings between January 1, 2009 and

6

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    December 31, 2010.  (Order, Art. VII, §§(1) and (2)(a).)  The purpose of reviewing these sampled

2    proceedings is to determine, among other things, whether "the foreclosing party or agent …had properly

3    documented ownership of the promissory note and mortgage," "the foreclosure was in accordance with

4    applicable state and federal law," "the procedures followed … were in accordance with the terms of the

5    mortgage loan and state law requirements," and whether "any errors, misrepresentations, or other

6    deficiencies identified … resulted in financial injury to the borrower or the mortgagee." (Order, Art. VII

7    §§3(a), (b), (d) and (h)).  If injury is identified, the Order then requires "reimbursing or otherwise

8    appropriately remediating borrowers for impermissible or excessive penalties, fees, or expenses, or for

9    other financial injury identified in accordance with this Article and "appropriate steps to remediate any

10   foreclosure sale where the foreclosure was not authorized." (Order, Art. VII §(5).)  This is the **only** section

11   of the Article which provides any relief to any aggrieved homeowners, and applies only to homeowners

12   who had pending foreclosures between January 1, 2009 and December 31, 2010, who were fortunate

13   enough to have been randomly selected in the Foreclosure Review sampling, and who were found by

14   Defendants to have suffered injury as a result of the "irregularities."  The Order does not speak to private

15   actions of any kind; it makes no allusions to preempting any actions by private litigants, let alone

16   proscribing such private actions.

17        The Order explicitly addresses, and provides for, actions brought by other agencies. Article

18   XIII states that, "**Nothing in this Order shall affect any action against the Bank or its institution-**

19   **affiliated parties by** …the United States Department of Justice, or **any other law enforcement**

20   **agency, to the extent permitted under applicable law.**" (Order Art. XIII, §8 (emphasis added)).

21        Defendants entered into a Stipulation to abide by the Order in April 2011.  (Exh. D to

22   Defendants'' RJN).  With the minor exception of the few reimbursements required for sampled

23   foreclosures which Defendants found to be irregular (Article VII), the Order requires only that

24   Defendants take *prospective* action to improve deficient practices in their mortgage servicing activities.

25   Nonetheless, Defendants attempt to use the Consent Order as a shield against *any* and *all* liability for

26   their illegal acts.  This was not the purpose of the Order.

27        **D) Plaintiffs seek to terminate the illegal and unfair practices by Defendants, but more**

28   **importantly to compel Defendants to remedy the current pollution of public land records.**

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

California takes the issues of violative notary practices, and that of forged documents pertaining to residential mortgages very seriously: Penal Code section 115.5, "Filing false or forged documents relating to single-family residences; punishment; false statement to notary public" provides:

> (a) Every person who files any false or forged document or instrument with the county recorder which affects title to, places an encumbrance on, or places an interest secured by a mortgage or deed of trust on, real property consisting of a single-family residence … with knowledge that the document is false or forged, is punishable, in addition to any other punishment, by a fine not exceeding seventy-five thousand dollars ($75,000).
> (b) Every person who makes a false sworn statement to a notary public, with knowledge that the statement is false, to induce the notary public to perform an improper notarial act on an instrument or document affecting title to, or placing an encumbrance on, real property consisting of a single-family residence …is guilty of a felony.

Moreover, Government Code section 8214.2 provides that, a notary who "knowingly and willfully with intent to defraud performs any notarial act in relation to a deed of trust on real property consisting of a single-family residence…with knowledge that the deed of trust contains any false statements or is forged, in whole or in part, is guilty of a felony." And while California has deemed it a misdemeanor for an individual who is a not a notary public to act as such, it is a *felony* for one to do so specifically in regard to mortgage and title documents pertaining to residential property. (Cal. Gov. Cod. §§ 8227.1, 8227.2).

The widespread, illegal notarial practices employed by Defendants have resulted in mass contamination of California's land records, as well as an unfair domination of the residential mortgage loan market by Defendants. Accordingly, Plaintiffs' are requesting the following remedies and relief:

> ▪ determination whether Defendants' improper notarial practices and related acts constitute violations of California Business & Professions Code §§17200, et seq. (FAC 50:1-3);
> ▪ an order compelling defendants and all those who acted in concert with them to be permanently enjoined from committing any acts of unfair competition related to the filing of improperly acknowledged documents in public land records (FAC 50:5-10)
> ▪ determination of the scope of the nature of Defendants' improper notarial practices, number of violations, specific identification of each violation, length of time over which the misconduct occurred, willfulness of the misconduct, and Defendants' assets and liabilities (FAC 50:11-21);
> ▪ determination of the costs savings to Defendants as a result of the violations (FAC 50:22-24);
> ▪ determination of the appropriate amount of restitution and disgorgement of profits for violations of section 17200 (FAC 50:24-26);
> ▪ an order requiring Defendants to record in the public land records, and in the docket or each court's claim register, a "Notice of Improperly Acknowledged Document" or similar document, for each improperly acknowledged document identified (FAC 50:26-51:9);
> ▪ recovery by Plaintiffs and the Class of their costs of suit, including attorneys fees as provided by law (FAC 51:13-15); and

8

■ a determination of malice (FAC ¶177).

**E) Plaintiffs necessarily brought this action separate from other pending actions.**

Plaintiffs Moncrief and Estrella had actions pending in the bankruptcy court, and California state courts, respectively. (Defendants' RJN Exh. H (Moncrief's FAC, Case No. 10-14057-LT11 S.D. Bankruptcy Crt.), and Exh. J (Estrella's FAC, Case No. BC 4666127 L.A. Sup. Crt.)) Estrella has recently dismissed his Superior Court case without prejudice pending the outcome of this case. Plaintiff Carillo-Thomas's also has a pending state court action, from which her UCL claim was recently dismissed. (Defendants' RJN, Exh. O (Carillo-Thomas's SAC, Case No. RIC 1106072; Riverside Sup. Crt.).) Carrillo was not aware of these notary practices and did not raise the issue. The Superior Court applied the presumption of validity to the acknowledged documents and summarily dismissed her wrongful foreclosure claim. This is a typical result in a California wrongful foreclosure case where improperly acknowledged documents are offered as evidence and presumed to be valid.

Moncrief's adversary action pertains to his bankruptcy, and relates to administration of his estate; as such, it is a "core proceeding," conferring original jurisdiction over the matter to the bankruptcy court.[4] Moreover, Moncrief's adversary action relates to documents manufactured with regard to his residential mortgage loan, and Defendants' foreclosure thereon. (Exh. H of Defendants' RJN, ¶¶14, 15.) The UCL claim in the adversary action is based *specifically* on the fraudulent signing of a Notice of Default. (Defendants' RJN Exh. H ¶27.) Moncrief is seeking relief for, *inter alia*, payment on the relevant promissory note, as well as compensatory damages. (Defendants' RJN Exh. H, 6:10-18.)

Estrella's state action pertained to garden variety wrongful foreclosure but he has voluntarily dismissed his case without prejudice. Carillo-Thomas's state court actions also pertain to Defendants' wrongful foreclosure of their residential property. (Ex. J (Estrella) and Exh. O (Carillo-Thomas's SAC) to Defendants' RJN.) Carillo-Thomas's dismissed UCL claim does not reference notarial practices, and is based on fraudulent representations regarding authority to foreclose, as well as unlawful foreclosure of her property. (Defendants' Exh. O ¶¶162-177.) Estrella's voluntarily

---

[4] 28 USC § 157(b)(2)(A); 28 USC § 1334(b).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1  dismissed state UCL claim also does not directly reference notarial practices, and relates to fraudulent

2  documents and authority, lack of due diligence, and perjury. (Defendants' Exh. J 33:19-37:4.) While

3  their state claims may implicate Defendants' illegal notarial practices, they do not specifically concern

4  them. Moreover, their state actions are brought on an individual basis, as the facts pertaining to the

5  wrongful foreclosures are specific to each Plaintiff. Here, the UCL claim is predicated exclusively on

6  Defendants' systemic implementation and utilization of illegal notarial procedures, and is being

7  brought on behalf of a putative class.

8

9  ## II. STANDARD OF REVIEW

10  "Rule 12(b)(6) motions are viewed with disfavor….Dismissal without leave to amend is proper

11  only in 'extraordinary' cases."[5]  In considering a motion pursuant to Rule 12(b)(6), a court must accept

12  as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from

13  them.[6] The complaint must be read in the light most favorable to the nonmoving party.[7]  A court may

14  consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed

15  pursuant to Federal Rule of Evidence 201.[8] The plaintiff is not required to precisely state each element

16  of the claim.[9] Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

17  claim showing that the pleader is entitled to relief."  For these reasons, it is only under extraordinary

18  circumstances that dismissal is proper under Rule 12(b)(6).[10]  Further, as a general rule, leave to amend

19  a complaint which has been dismissed should be freely granted. (Fed.R.Civ.P. 15(a).)

20  In considering a motion to dismiss under Rule 12(b)(1), the district court must accept the

21  complaint's well-pleaded factual allegations as true and draw all reasonable inferences from those

22

23

24  [5] *Broam v. Bogan* 320 F.3d 1023, 1028 (9th Cir. 2003), citing . *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) and *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir. 1981).

[6] *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998).

25  [7] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995).

26  [8] *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

[9] *Am. Fair Credit Ass'n v. United Credit Nat'l Bank*, 132 F. Supp. 2d 1304, 1308 (D. Colo. 2001), citing 5 Charles A. Wright

27  and Arthur R. Miller, Federal Practice and Procedure § 1216, at 154–159 (1990).

[10] *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981), see also *Susilo v. Wells Fargo Bank, N.A.*, 796

28  F.Supp.2d 1177, 1184 (C.D. Cal. 2011).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1  allegations in the plaintiff's favor.[11]   The plaintiff bears the burden of establishing subject-matter

2  jurisdiction.[12] However, a 12(b)(1) motion should be granted only if it appears certain that the plaintiff

3  cannot prove a plausible set of facts that establish subject-matter jurisdiction.[13]   A court ruling on a motion

4  to dismiss under Rule 12(b)(1) may rely upon affidavits and other materials supporting its motion.[14]

5

6

7                                    **III. ARGUMENT**

8          As detailed below, Plaintiffs' FAC sufficiently states claims upon which relief may be granted,

9  and the Court has subject matter jurisdiction over the instant action.

10         **A) The Court's Jurisdiction Over the Instant Matter Is Not Precluded By the April 2011**

11  **Consent Order, Nor Is the Court Required to Abstain From Exercising Jurisdiction**

12         Defendants argue that the Consent Order of April 11, 2011 issued by the Office of the

13  Comptroller of the Currency ("OCC"), and stipulated to by Defendants, together with 12 U.S.C. §

14  1818 subsection (i) bars federal subject matter jurisdiction over the this action.  Defendants' effectively

15  argue that: the Consent Order addresses the issues raised in Plaintiffs' FAC; because the Order was

16  issued by the OCC, the OCC holds *exclusive* authority over these issues, and; that section 1818(i)

17  precludes any litigation in the District Court against Defendants on these issues.

18         But as detailed below, the Order itself does not encompass or address the fact that public land

19  records are now plagued with improperly acknowledged and/or photo-shopped documents, let alone

20  provide any remedies therefor.  The Order also does not provide remedies to individuals aggrieved by

21  the systematic use of illegal notarial procedures. The Order also does not contemplate private actions

22  on issues referred to within the Order, and does not prohibit such actions.  *Nor does the OCC have any*

23  *expertise in California Notary law, California Criminal law or the California land record system.*

24  Application of § 1818(i) to the Order, therefore, does not grant "exclusive jurisdiction" to the OCC,

25  and does not preclude the instant court from exercising jurisdiction over the matter.

26  _____
   [11] *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001).
27  [12] *United Phosphorus Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).
   [13] *Davis v. United States*, 597 F.3d 646, 649 (5th Cir. 2009).
28  [14] *United Phosphorus Ltd., supra*, 322 F.3d at 946.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    Lastly, neither the doctrine of Primary Jurisdiction nor the Equitable Abstention doctrines,

2  cited by Defendants, are applicable to the instant suit and the Court should therefore not refrain from

3  exercising jurisdiction over Plaintiffs' action.

4      ***1) The Consent Order Does Not Address Defendants' Pervasive Pollution of Public Land Records***

5  ***and Does Not Bar Plaintiffs' Action Pertaining Specifically to Defendants' Illegal Notarial Practices.***

6    The Consent Order does not address the fact that Defendants' systematic use of improper

7  notarial practices has resulted in the mass pollution of California's public records.  It therefore does not

8  provide the exclusive remedy for this issue.  Further, the Order itself explicitly does *not* bar the

9  Department of Justice or other law enforcement agencies from bringing action against Defendants, for

10 *any* reason, and neither contemplates nor prohibits private action of any kind.

11    a) Because the Consent Order Does Not Contemplate the Pollution of Public Land Records, it

12 Does Not Provide the Exclusive Remedy Therefor.

13    The 2011 Consent Order mandates implementation of several procedural safeguards to prevent

14 any further improper foreclosures.  However, it does not address the fact that public land records are

15 now polluted by improperly acknowledged documents created (or fabricated) by Defendants, let alone

16 provide the exclusive remedies for such damage.  Plaintiffs' FAC alleges that Defendants have

17 institutionalized the practice of soliciting, coercing and influencing improper notarial acts, and that as a

18 result, there are thousands and thousands of improperly acknowledged documents currently plague the

19 California public land records and will do so indefinitely unless remedial action is taken.[15]

20    Because acknowledgements confer a *prima facie* presumption that the acknowledged

21 document is a duly authorized act of the named entity, it restricts individuals from challenging the

22 veracity and authenticity of a document and its contents. Plaintiffs seek to identify each of these

23 potentially illegitimate documents, and to put the public on notice of the fact that these documents are

24 not necessarily reliable evidence of the facts they purport to convey.  The Order does not address this,

25 and therefore does not bar Plaintiffs from seeking relief on this issue within the court system.

26    b) Neither Private Actions Nor Actions Based on Improper Notarial Services Are Precluded by the

27

28 ---

[15] FAC ¶¶33, 35, 42, 43, 181-184, 198, 253-254.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    Order and the Order Therefore Does Not Preclude Subject Matter Jurisdiction Over This Matter.

2           Nowhere in the Order does it address private actions by private individuals, let alone bar such

3    actions.  Moreover, the issue of notarization is mentioned only twice in the Order: once in Article I,

4    "Comptroller's Findings", subsection (2)(b), that there were "numerous affidavits or other mortgage-

5    related documents that were not properly notarized, including those not signed or affirmed in the

6    presence of a notary;" and again in Article IV, "Compliance Programs" subsection (c), where

7    Defendants are ordered to submit a compliance program to the OCC which would assure that mortgage

8    servicing and foreclosure operations comply with all applicable laws including, "processes to ensure

9    that affidavits filed in foreclosure proceedings are executed and notarized in accordance with state

10   legal requirements and applicable guidelines." But the Order provides no remedies for violations of

11   notarial laws, and does not address private actions against the Defendants, nor actions specifically

12   based on the issue of improper notarial practices. It therefore does not generate a "jurisdictional

13   prohibition on private third party actions." (Motion 1:16-17.)

14          Moreover, Defendants contend that, "Plaintiffs' Action runs afoul of Section 1818(i) and

15   Congress' and OCC's mandate that 'nothing in the Consent Order, express or implied, shall give to

16   any person or entity, *other than the parties hereto*, and their successors hereunder, any benefit or any

17   legal or equitable right, remedy or claim under this Order.'" (Motion, 17:5-9 (emphasis added; ellipses

18   and brackets omitted), citing the Order at Art. XIII § (10).) Their citation to the Consent Order is

19   correct – the Order prohibits any nonparties from seeking remedy or claim under the Order.  Ironically,

20   Defendants then claim that, "vesting of exclusive jurisdiction in the OCC does not mean that Plaintiffs

21   are without a remedy; only that they must seek their remedy under the Consent Order."  (Motion,

22   17:10-12.)  Yet Plaintiffs were not a party to the Order, so by Defendants' own admission, they have

23   no "benefit or any legal or equitable right, remedy or claim under ... this Order."  By Defendants' logic

24   then, Plaintiffs have no right of action via the courts for any illegal acts by Defendants that are (even

25   peripherally) referred to within the Order; but they also have no standing to assert any right or remedy

26   under the Order.  In other words, according to Defendants Plaintiffs have *no* right to seek any relief for

27   their claims.  Accordingly, by Defendants assertions, they have complete immunity from *any* liability,

28   no matter how egregious their actions, so long as private claims address issues that were *mentioned*

                                          13

within the Order. This is an absurd result, and runs contrary to the apparent intent of the Order.

Defendants cite to https://independentforeclosurereview.com/, as allowing borrowers to request an individualized review of their case, and which provides possible remediation if a "determination of financial injury" is made.[16] (Motion 7:1-4.) According to the website, the Independent Foreclosure Review it provides to borrowers is "part of a consent order with federal bank regulators, the Office of the Comptroller of the Currency (OCC)." (https://independentforeclosurereview.com/Faqs.aspx, FAQ no. 1.) The Review provides homeowners the opportunity to request a review of their foreclosure process, and if the review determines that "financial injury occurred because of errors or other problems during their home foreclosure process, the customer may receive compensation or other remedy." (*Id.*)

But this Review does not address the specific issue of improper notarial services, nor the impact it has had on public land records, and therefore does not address the bulk of Plaintiffs' claims. Moreover, even if Plaintiffs were to pursue this avenue, the website itself addresses whether or not the Independent Foreclosure Review offers wronged borrowers their *only* avenue of relief: the answer the website provides to Frequently Asked Question ("FAQ") number 23, "Does filing a Request for Review Form prevent me from filing other litigation or action against the servicer?" states unequivocally, "No. **Submitting a request for an Independent Foreclosure Review will not preclude you from any other options you may pursue related to your foreclosure.**" (https://independentforeclosurereview.com/Faqs.aspx, FAQ no. 23 (emphasis added).) Moreover, the Review is applicable only to Chase "customers who were part of a foreclosure action on their primary residence during the period of January 1, 2009 to December 31, 2010," and the *must be requested by borrowers no later than July 31, 2012. (Id.*, FAQ nos. 1, 7.) The borrowers who may seek review therefore are limited, and do not necessarily include Plaintiffs and the putative class members.

c) The Consent Order Explicitly Allows for Actions Such as That Brought by Plaintiffs, and Therefore Does Not Preclude Subject Matter Jurisdiction by the District Court.

14

Conspicuously omitted from Defendants' Motion is citation to section eight of the Order's eighth Article, which unambiguously states that actions by other entities are *not* barred by the Order (brackets and emphasis added):

> "This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(b) [cease and desist orders]... **Nothing in this Order shall affect <u>any</u> action against the Bank or its institution-affiliated parties by a bank regulatory agency, the United States Department of Justice, or <u>any other law enforcement agency, to the extent permitted under applicable law</u>."**

Plaintiffs filed their action in the capacity of private attorney generals. (FAC ¶179). Because Plaintiffs are acting as stand-ins for the California Attorney General, their Complaint is *explicitly allowed* by the Consent Order. Moreover, Plaintiffs anticipate that their action will be joined by several California County District Attorneys. (FAC ¶4). Accordingly, the Order itself provides for Plaintiffs' action and, contrary to Defendants' assertion, does NOT provide the "OCC [with] exclusive jurisdiction over the administration and enforcement of binding obligations on Chase to provide comprehensive relief to remediate the home lending problems faced by many of the nation's distressed borrowers." (Motion 3:24-27.)

Moreover, this provision underscores the fact that Defendants are not insulated from liability for their tortious behavior merely because the OCC and Defendants entered into a Consent Order. The Consent Order was not intended to be a free pass for Defendants, allowing them to evade liability for any and all illegal behavior directly or peripherally addressed in the Order, and therefore does not preclude litigation by individuals or entities other than the OCC.

d) <u>Section 1818(i) Does Not Bar Federal Subject Matter Jurisdiction Over This Matter Because, Even if the Consent Order Addressed the Issues Raised by the FAC, the Remedies Sought By Plaintiffs Do Not Interfere With Enforcement of the Order.</u>

---

[16] Financial injury is not defined, but a inexhaustive list of examples is provided, including: The mortgage balance amount at the time of the foreclosure action was more than what the borrower actually owed; the borrower was doing everything the modification agreement required, but foreclosure still occurred; the foreclosure action occurred while the borrower was protected by bankruptcy; fees charged or mortgage payments were inaccurately calculated, processed, or applied. (https://independentforeclosurereview.com/Faqs.aspx, FAQ no. 5.) These injuries are not the subject of Plaintiffs' FAC, and it is unlikely that such a review would yield any relief to the Plaintiffs.

15

Defendants note that, "the Supreme Court has held that section 1818(i)[17] expressly precludes courts' jurisdiction over any third party action that "affect[s] by injunction … the **issuance** or **enforcement** of any [OCC] notice or order." (Motion 12:18-20 (brackets and quotations in original; emphasis added).)   Defendants contend that this somehow precludes Plaintiffs' instant action. However, Plaintiffs are not seeking to "affect by injunction the issuance or enforcement" of the Order.

Plaintiffs are seeking determination of the scope of Defendants' improper notarial practices, identification of these notarial services, an order enjoining Defendants' from continuing such practices, identification of the specific documents were the notarial violations occurred, an order requiring Defendants to put the public on notice that said documents were the result of/affected by such violations, and restitution for the violations.   (FAC 50:1-51:18.)   If anything, Plaintiffs are seeking to *augment* the remedial mandates of the Order; Defendants fail to show how such an augmentation would "interfere" with enforcement of the Order.

Defendants claim that "If the OCC-mandated "independent review" found, for example, that a certain instrument was improperly endorsed or assigned, but the Court found otherwise, this would "affect" Chase's ability to comply, a result that neither the Court nor the OCC likely intend." (Motion 16:17-21.)   But Defendants fail to show *what* manner compliance would be affected (payment of monies? implementation of procedural safeguards?), let alone how it would be affected.   The only reasonably conceivable manner in which compliance could be affected is in regard to compensation or reimbursement required by the Order, and which could be duplicated by a finding of liability in the instant action.   However, this is not a concern.   The Order provides that, in the event it is determined that there was "financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies," Defendants shall "reimburse[e] or otherwise appropriately remediat[e] borrowers for impermissible or excessive penalties, fees, or expenses, or for other financial injury identified in

---

[17] Section 1818(i) states in relevant part:"(1) The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section or under section 1831o or 1831p–1 of this title, and such courts shall have jurisdiction and power to order and require compliance herewith; but except as otherwise provided in this section or under section 1831o or 1831p–1 of this title no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, terminate, or set aside any such notice or order."

16

1   accordance with this Article." (Order Art. VII §§5 and 5(a) (brackets added).)  But Plaintiffs are not

2   seeking reimbursement for impermissible fees or penalties; they are seeking a "determination of the

3   amount of restitution and disgorgement of profits appropriate for violations of Cal B&P §17200 in this

4   context," which is wholly separate from the fees and financial injury described in the Order.  (FAC

5   ¶50:24-26.)  Consequently, nothing in Plaintiffs' FAC would interfere with "enforcement or issuance"

6   of the April 2011 Consent Order.

7       Defendants cite to *Am. Fair Credit Ass'n v. United Credit Nat'l Bank*, 132 F. Supp. 2d 1304

8   (D. Colo. 2001) as supporting their assertion that 1818(i) precludes Plaintiffs' claims.  In *Am. Fair*

9   *Credit Ass'n*, plaintiff, an organization providing educational materials to, and services for, individuals

10  seeking to establish and maintain good credit, brought suit against United Credit National Bank

11  ("UCNB").  After suit was filed, Defendant UCNB entered into a Consent Order with the OCC which

12  ordered UCNB to, *inter alia*, "immediately, and until further notice by the OCC, cease and desist all

13  activity and transactions relating to the products of [plaintiff], including … payment of funds for any

14  reason to AFCA." (*Id.* at 1306 (brackets added).)  Subsequently, UCNB's parent company and co-

15  defendant, United Insurance Companies, Inc. ("UICI") entered into a Consent Order with wherein it

16  was ordered to "assume all of [UCNB's] remaining contingent liabilities, and thereafter UICI shall

17  pay-off, compromise, settle or resolve these contingent liabilities at no loss or cost to [UCNB]…." (*Id.*

18  at 1307 (brackets in original).)  Later, UCNB entered into another Consent Order in which it stipulated

19  that the funds provided by UICI could be used only for retirement of UCNB's maturing deposit

20  liabilities and payment of certain other liabilities consistent with the terms of the prior Order.   The

21  defendants thereafter brought a motion to dismiss plaintiff's claims, via application of section 1818(i).

22      As noted by Defendants, the court in *Am. Fair Credit Ass'n* dismissed seven of Plaintiff

23  AFCA's claims because,

24      If … AFCA prevailed, defendant **UCNB would be required to pay money damages in**
        **direct contravention of the consent order that defendant UCNB 'cease and desist** all

25      activity … including but not limited to **payment of funds for any reason to AFCA.'**
        Because such an outcome would 'affect the enforcement of an order' issued by the OCC,

26      12 U.S.C. § 1818(i), jurisdiction does not exist over these claims.

27

28  (*Am. Fair Credit Ass'n, supra,* at 1311 (emphasis added).)  The dismissed claims in *Am. Fair Credit*

17

1   *Ass'n* unambiguously required action in direct contravention to an explicit provision of the relevant

2   Consent Order – that of payment of fees to the plaintiff.  But there is no such provision in the April 13,

3   2011 Consent Order; nothing in the Order prohibits payment of any kind to Plaintiffs, nor the

4   implementation of additional remedial measures to cleanse the public land records of Defendants'

5   improperly acknowledged documents.

6   Also as noted by Defendants, the plaintiff in *Am. Fair Credit Ass'n* was allowed to pursue

7   some of its claims that the court determined were based on conduct or relief falling outside the

8   limitations in the relevant consent order. (*Id.* at 1311.)  The court found that plaintiff's declaratory

9   judgment claim against UCNB would not affect enforcement of the orders issued against UCNB.

10  Specifically, plaintiff sought a declaration that Defendant UCNB did not properly terminate its

11  contract with Plaintiff. (*Id.* at 1312.)  The relevant Consent Order required UCNB to "rescind, within

12  thirty days of the effective date of this Order, all contracts or agreements not reached at arm's length."

13  (*Id.*)  Because UCNB did not indicate it had rescinded the contract with Plaintiff on such a basis, the

14  declaratory relief Plaintiff sought was not precluded by the consent orders.  Thus, the *Am. Fair Credit*

15  *Ass'n* allowed plaintiffs claims to proceed, even though the relevant consent order actually addressed

16  the issue, head-on.  Here, the Order does not even address the issue of public records being plagued by

17  illegitimate documents, and as described above, Plaintiffs' requests may actually compliment the

18  measures mandated by the Order, but in no way interfere with *enforcement* of those mandates.

19  Additionally, the *Am. Fair Credit Ass'n* plaintiff was allowed to maintain its claims against

20  UCNB's parent company and co-defendant, UICI, even though UICI also signed a Consent Order, and

21  even though the issue of payments for liabilities was addressed within that Order (*Id.* at 1311 (brackets

22  in original; emphasis added):

23  > **The June 29, 2000 UICI Consent Order does not prohibit Defendant UICI from
   > making payments to Plaintiff, as Defendants maintain**. The provision of the June 29,

24  > 2000 UCNB Consent Order requiring Defendant UCNB to use funds provided by
   > Defendant UICI "only for the retirement of [UCNB's] maturing deposit liabilities and

25  > payment of certain other liabilities ... not otherwise prohibited by the terms of the"
   > February 25, 2000 UCNB Consent Order ...does not apply to Defendant UICI's

26  > assumption of Defendant UCNB's remaining contingent liabilities. Accordingly, subject

27  > matter jurisdiction exists with respect to Plaintiff's claims against Defendants UICI....

28

18

---

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    Here, too, the April 13, 2011 Consent Order does not prohibit Defendants from making a

2    determination of the scope of the violations described by Plaintiffs, nor from paying the damages arising

3    from these violations, let alone from putting the public on notice of improperly acknowledge documents.

4    It is worth noting that the *Am. Fair Credit Ass'n* opinion included text from a November 17,

5    2000 letter from the OCC regarding UCNB/UICI's motion to dismiss, wherein the OCC's Assistant

6    Director of the Enforcement and Compliance Division roundly rejected the defendants' attempt to use

7    the Order as a means of depriving the court of jurisdiction (*Id.* at 1308, brackets in original):

8    We have [ ] had a chance to review [the motion to dismiss and Plaintiff's response]. We
     feel it is important to advise you that we do not agree with your position that the various
9    Consent Orders entered into by [UCNB] and UICI divest the court of subject matter
10   jurisdiction under 12 U.S.C. § 1818(i) to the extent that it is alleged the court may not hear
     claims related to liabilities that accrued prior to imposition of the Orders, nor to the extent
11   you are asserting that the [OCC] ordered UICI not to make any payments to ... AFCA.
12

13   This letter is indicative of the fact that Consent Orders issued by the OCC are not inherently

14   intended to deprive private parties of remedies available through the courts, and blatantly refutes

15   Defendants' insinuations that Consent Orders intrinsically confer the OCC exclusive jurisdiction over

16   the matters contained therein.

17   Defendants provide a chart of areas where Plaintiffs' claims would allegedly interfere with the

18   issuance or enforcement of the Consent Order. (Motion 14:16-16:14). Of the five areas listed, the first

19   three are actually "findings" contained in the Order, and therefore are irrelevant for determination of

20   whether Plaintiffs' requests interfere with the issuance or enforcement of the Order. As for the rest, as

21   described above, the remedies or relief sought by Plaintiffs actually supplement the remedial mandates

22   contained in the Order, and in no way interfere with enforcement of the Consent Order.

23   **2) The Doctrines of Primary Jurisdiction and Equitable Abstention Do Not Preclude the**

24   **Court from Exercising Jurisdiction Over Plaintiffs' Claims.**

25   The instant Court should not refrain from exercising its jurisdiction over Plaintiffs' claims. As

26   shown below, application of either the primary jurisdiction doctrine or the equitable abstention would

27   be inappropriate, and would also result in detriment to the Plaintiffs.

28   a) Application of the Factors for the Primary Jurisdiction Doctrine Yield a Determination that

19

1  the Court Should Retain  Jurisdiction Over Plaintiffs' Suit.

2  "Primary jurisdiction" is a judicially created doctrine that allows federal courts to stay or

3  dismiss actions over which they have jurisdiction pending resolution of some issue within the special

4  competence of an administrative agency, and comes into play whenever enforcement of a claim

5  properly before the court requires resolution of issues which, under a regulatory scheme, have been

6  placed within the jurisdiction of an administrative body.[18]  The court has *discretion* either to retain

7  jurisdiction or, if the parties would not be unfairly disadvantaged, dismiss the case without prejudice.[19]

8  Several factors are relevant in determining whether the primary jurisdiction doctrine applies:

9  whether the agency determination lies at the heart of the task assigned the agency by Congress; whether

10  agency expertise is required to unravel intricate technical facts; and whether, though perhaps not

11  determinative, the agency determination would materially aid the court.[20] Analysis of these factors yields

12  a finding that application of the primary jurisdiction doctrine is inappropriate.  First, the OCC deals with

13  *banks* specifically; not notary services.  The mere fact that banking procedures necessarily entail notarial

14  services does not mean the OCC is tasked with overseeing notary services any more than it is tasked with

15  the minting of coins merely because banks deal in money.  Therefore, agency determination of notary

16  law violations (which are formulated by each state) is not at the heart of the task assigned the OCC.

17  Second, the OCC's expertise is specifically *not* required to unravel the technical facts of whether illegal

18  notarial procedures have been utilized, as this issue is determined by state law – California, specifically.

19  The OCC has no specialty in application or understanding of notary law, which does not involve the

20  "unraveling of intricate facts" anyway.   Third, because the OCC has no special familiarity with

21  California notary laws, agency determination would not materially aid the court.

22  Moreover, Plaintiffs would be unfairly advantaged by dismissal of their action.[21]  As stated

23  above, Plaintiffs are not parties to the Consent Order, and therefore have no standing to assert any

24

25  [18] *Reiter v. Cooper*, 507 US 258, 268 (1993); *Elam v. Kansas City Southern Ry. Co.* 635 F.3d 796, 809–812 (5th Cir. 2011);
*United States v. Culliton* ,328 F.3d 1074, 1081 (9th Cir. 2003).

26  [19] *Reiter v. Cooper, supra*, 507 US at 268–269; *Illinois Bell Tel. Co., Inc. v. Global NAPs Ill., Inc.* 551 F.3d 587, 595 (7th Cir. 2008).

27  [20] *Rymes Heating Oils, Inc. v. Springfield Terminal Ry. Co.*, 358 F.3d 82, 91(1st Cir. 2004); see also *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775, 781 (9th Cir. 2002).)

28  [21] *Reiter v. Cooper, supra*, 507 US at 268–269.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    rights or benefits under the Order.  In the event Plaintiffs' action is dismissed, they will be left without

2    any effective redress for the wrongs committed by Defendants and described in the FAC.  Moreover,

3    the public at large will suffer because of the continuing pollution of its public land records.

4         b) Application of the Doctrine of Equitable Abstention is Inappropriate in the Instant Case.

5         The judicially-created equitable abstention doctrine gives courts discretion to abstain from

6    deciding a UCL claim. [22]  Abstention may be appropriate where: resolving the claim requires

7    determining complex economic policy, which is best handled by the legislature or an administrative

8    agency; granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and

9    enforce given the availability of more effective means of redress; or federal enforcement of the subject

10   law would be more orderly, more effectual, less burdensome to the affected interests.[23]  There is no

11   "complex economic policy" at stake here; only the issue of whether California notary laws were

12   repeatedly violated by Defendants.  Moreover, because it is specifically *California* law that Plaintiffs'

13   are addressing, it is not less burdensome, nor more orderly, for the OCC to monitor or enforce the

14   injunctive relief sought by Plaintiffs, even assuming that the OCC would take on such responsibilities.

15   This would entail a potentially complicated bifurcation of the OCC's resources for the purpose of

16   focusing only on California documents.  Further, there is no more effective means of redress; Plaintiffs

17   are asking that Defendants bear the burden of identifying the scope of their utilization of improper

18   notarial services, and to take steps to mitigate the current pollution of public records by identifying and

19   appending each such affected document and appending it with a "Notice of Improperly Acknowledged

20   Document" (or similar document).  (FAC 50:27-51:9.)  Requiring Defendants to bear the burden of

21   remedying the damage caused by their illegal actions is the least burdensome option.

22   **B) PLAINTIFFS' FAC STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

23        The FAC states a claim upon which relief can be granted as to each Plaintiff.

24        ***1) All Plaintiffs Have Alleged Economic Injury and Therefore Have Standing Under the UCL.***

25        Defendants correctly point out that a plaintiff seeking claims under California's Unfair

---

[22] *Wehlage v. EmpRes Healthcare, Inc.*, 791 F.Supp.2d 774, 784-785 (N.D.Cal. 2011), citing *Desert Healthcare Dist. v. PacifiCare FHP, Inc.*, 94 Cal.App.4th 781, 795 (2001); see also *Alvarado v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292, 1297-98 (2007).

[23] *Wehlage v. EmpRes Healthcare, Inc.*, *supra*, 791 F.Supp.2d at 784-785, citing *Alvarado*, *supra*, 153 Cal.App.4th at 1298.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1　Competition Laws as codified in California Business and Professions Code sections 17200, et.seq,

2　("UCL") must have suffered "injury in fact and lost money or property" as a result of the unfair

3　competition. (Cal. Bus. & Prof. Cod §17204.) The purpose of this standing requirement is to prohibit

4　private attorneys from filing lawsuits for unfair competition where they have no client who has been

5　injured in fact under the standing requirements of the United States Constitution.[24] Plaintiffs have each

6　and all been injured by the acts of Defendants and, contrary to Defendants' assertions, Plaintiffs

7　explicitly allege particular economic harms within the FAC, even though they are not required to

8　precisely state each element of their claims. (*Am. Fair Credit Ass'n, supra,* 132 F. Supp. 2d at 1308.)

9　　　The FAC describes how Defendants' use of improperly acknowledged documents has caused

10　Plaintiffs, collectively, to "suffer actual injury, incur improper loan servicing fees, increased loan

11　charges, a loss of personal rights, and loss of property rights, decreased property values, lost costs, lost

12　time, and increased attorney fees combating the effect and cure the widespread publication of

13　improperly acknowledged documents." (FAC ¶252). A plaintiff suffers injury in fact for purposes of

14　standing under California's UCL when he or she has: (1) expended money due to defendant's acts of

15　unfair competition; (2) lost money or property; or (3) was denied money to which s/he has a claim.

16　(*Marilao v. McDonald's Corp.,* 632 F.Supp.2d 1008 (S.D.Cal. 2009), see also *Kwikset Corp. v. Superior*

17　*Court* 51 Cal.4th 310 (2011).)[25] Plaintiffs have plead harm in the form of expended money (the

18　improper loan servicing fees and increased attorney fees), lost money or property (the increased loan

19　charges, loss of personal and property rights, decreased property values, and lost costs) and were

20　required to enter into a transaction that was otherwise unnecessary (the retention of, or continued

21　retention of, attorneys). (FAC ¶252). Under both *Marilao* and *Kwikset* Plaintiffs have sufficiently

22　pleaded actual economic harm, and have standing to bring their UCL claims against Defendants.

23　　　It is important to note that in UCL class action suits, only the class representatives must meet

24　the standing requirement of having "suffered injury in fact" and having "lost money or property as a

25

26　
---
[24] *Birdsong v. Apple, Inc.,* 590 F.3d 955 (9th Cir.2009).

27　[25] Economic injury where plaintiff (1) surrendered more/acquired less than s/he otherwise would have in a transaction; (2) had a property interest diminished; (3) was deprived of money or property; or (4) was required to enter into a transaction

28　costing money or property that otherwise was unnecessary).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    result of" the defendant's unfair competition. [26]   Plaintiffs, as the putative class representatives, have

2    alleged sufficient standing.

3          *2) Plaintiff Whitcomb's Property Been Released by the Trustee in his Bankruptcy Matter.*

4          Defendants argue that, because Plaintiff Whitcomb's property has not been released by his

5    bankruptcy trustee, he does not have standing to bring the instant suit regarding improper notarial

6    practices (**Bankruptcy Petition #: 8:09-bk-21777-CB**). However, on Chapter 7 trustee John M.

7    Wolfe has since released the property, accordingly, this argument is moot.   Plaintiff's motion to re-

8    open the subject bankruptcy case was granted on October 21, 2011 and the potential claims against

9    Defendants were added by amendment on February 27, 2012.   Trustee Wolfe did not seek to

10   administrate the potential claims, offered no opposition to Plaintiff's Motion to Compel Abandonment

11   of the Litigation Claim and allowed the "No-Asset Report" to stand.   Trustee Wolfe indicated to

12   Plaintiff's counsel that he had received notice of the amendment, was aware of the litigation claim had

13   allowed his "No-Asset Report" to stand.   Thereafter, Plaintiff Whitcomb and Wolfe agreed that

14   Whitcomb would withdraw his Motion to Compel Abandonment of the Claims as it was moot.   The

15   bankruptcy case was closed on June 25, 2012 without Wolfe administrating this litigation claim.   Only

16   Whitcomb has standing to pursue this matter.

17         *3) The California Litigation Privilege Does Not Apply to the Instant Litigation, and*

18   *Therefore Does Not Bar Plaintiffs Bakenie, Whitcomb and Estrella's Claims; the improperly*

19   *acknowledged documents were created in contemplation of non-judicial foreclosure, not litigation.*

20         As a preliminary matter, it must be noted that Defendants' contention that the California

21   litigation absolutely protects "conduct" (Motion 21:26-28) is patently false; the privilege cited by

22   Defendants, where applicable, applies only to *publications* and *broadcasts* and thus does not protect,

23   e.g., discovery of whether notarization of certain documents occurred in the presence of the person

24   whose signature was the subject of acknowledgement. (Cal. Civ. Cod §47(b); see also *Action*

25   *Apartment Ass'n, Inc. v. City of Santa Monica* 41 Cal.4th 1232 (2007), (as a general rule, litigation

26   privilege applies only to communicative acts and does not privilege tortious courses of conduct).)

27

28     [26] B&P §17203, *In re Tobacco II Cases* 46 Cal.4th 298 (2009); *Weinstat v. Dentsply Intern., Inc.* 180 Cal.App.4th 1213 (2010).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    Moreover, the privilege cited by Defendants does not protect the relevant communications because, as

2    shown below, the privilege does not apply.

3            The improperly acknowledged documents were created in contemplation of non-judicial

4    foreclosure, not litigation. The use of these improperly acknowledged documents is so widespread that

5    these documents turn up in bankruptcy and litigation, but they are not created for such purpose. The

6    Defendants make the disingenuous claim that, with regard to Plaintiffs Bakenie, Whitcomb and

7    Estrella's, their claims are based on "conduct that they allege took place in connection with bankruptcy

8    proceedings." (Motion 21:26-28).  However, the documents that Plaintiffs allege were improperly

9    notarized and/or photo-shopped, were Substitutions of Trustee and Assignments of Deed of Trust.

10   These were published in regard to *nonjudicial foreclosure* – not bankruptcy.  That these documents

11   ended up being used in a bankruptcy proceeding or in any other court, is irrelevant; they would have

12   been manufactured regardless, for purposes of allowing Defendants to assert the terms of the relevant

13   residential mortgage loans. [27]  Accordingly, they were created in connection with nonjudicial

14   foreclosure.

15           California courts have held unequivocally that the absolute litigation privilege contained in

16   Civil Code section 47(b), cited by Defendants, does *not* apply to nonjudicial foreclosure proceedings:

17           By contrast, nonjudicial foreclosure bears none of the attributes essential for absolute
             privilege...[N]onjudicial foreclosure is a private procedure involving private parties,
18           occurring pursuant to a private power of sale contained in a deed of trust. **By definition, it
             does not occur in a judicial proceeding. Hence, on its face, it is not covered by the
19           litigation privilege. It also does not occur in an "official proceeding authorized by
             law"** (§47, subd. (b)(3))...proceedings involving the government, an agency or official
20           thereof, or quasi-judicial proceedings otherwise reviewable by writ of mandate). *Kachlon v.
             Markowitz,*168 Cal.App.4th 316, 339 (2008) (internal citations omitted; emphasis added).
21

22   "Logic and the purposes of the statutory scheme suggest that the common interest privilege

23   (§47(c)(1)), not the absolute privileges for communications in judicial or official proceedings ...

24   applies to nonjudicial foreclosure." (*Susilo, supra*, 796 F.Supp.2d at 1194 (citing *Kachlon, supra*.).

25           *Kachlon* and *Susilo* held that the privilege embodied in Civil Code section 47(b) does not apply

26   to nonjudicial foreclosure procedures, although the qualified privilege contained in subsection (c) of

27

28   [27] FAC ¶¶56, 61, 68, 78, 83, 92, 95, 107,113, 121, 122, 124.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

Civil Code 47 *might* apply, absent malice by the asserting party.  The qualified privilege of section 47(c) applies to "communication[s] without malice."  For purposes of section 47 subsection (c), "malice is defined as actual malice, meaning 'that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'"[28]  Here, Plaintiffs have not only explicitly plead malice (FAC ¶208), but have alleged facts showing that Defendants "lacked reasonable grounds for belief in the truth of the publication" (in this case, Assignments of Deeds of Trust and Substitution of Trustees), and therefore "acted in reckless disregard of the plaintiff's rights."[29]  Accordingly, any privilege that would otherwise be available to Defendants is rendered void by both the allegations of malice, and the allegations regarding Defendants' lack of reasonable belief in the truth of the Assignments of Deeds of Trust and Substitutions of Trustees and reckless disregard for the homeowners' rights affected by these improperly acknowledged documents.

In *Susilo*, defendant Wachovia Bank tried to assert the litigation privilege in regard to wrongful foreclosure claims by plaintiff.  The *Susilo* plaintiff alleged several wrongful acts engaged in by Defendant Bank pertaining to foreclosure, including providing conflicting information about whether or not the foreclosure sale could be forestalled by payment, failing to provide accurate reinstatement amounts, and executing foreclosure through bad faith and fraud.  (*Susilo, supra*, 796 F.Supp.2d at 1182-1184.)  The *Susilo* court refused to extend the qualified privilege to Wachovia because the plaintiff sufficiently alleged malice on the part of the defendant.  (*Id.* at 1194.)  Similarly, here Plaintiffs allege malice explicitly (FAC  ¶208), as well as facts tantamount to bad faith and fraud by Defendants including, but not limited to, "photoshopping" documents for filing in California public land records, forging notary signatures, and blatant violation of California notary laws.  (FAC ¶¶213, 220-223).  Accordingly, neither the absolute nor qualified litigation privilege applies to the instant suit.

### 4) Plaintiffs Estrella and Moncrief Have Properly Alleged UCL Claims in This Action.

Defendants contend that Plaintiffs Estrella and Moncrief improperly split their claims in the instant suit, from Estrella's state court action (Ex. J to Plaintiffs' RJN) and Moncrief's adversary

---

[28] *Kachlon, supra*, 168 Cal.App.4th at 366, citing *Sanborn v. Chronicle Pub. Co.* 18 Cal.3d 406, 413 (1976).
[29] FAC ¶¶179, 209, 210, 214, 233, 236.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    complaint (Ex. H), respectively.  However, the claims brought by each plaintiff necessarily must be

2    brought in two separate actions, in two separate courts.

3           Moncrief's adversary action pertains to his bankruptcy and necessarily had to be filed in the

4    bankruptcy court, as it goes to disposition of real property which Moncrief holds interest in, and which

5    the bankruptcy court is overseeing disposition of.  However, bankruptcy courts have no jurisdiction

6    over proceedings that do not affect the debtor's estate.[30]  In the instant action, Moncrief is not seeking

7    "a determination of his claims for Wrongful Foreclosure or the legal effect of improper notarization of

8    foreclosure documents affecting Plaintiff's property."  (FAC ¶173.)    Rather, he seeks "seeks a

9    determination of the scope of the systemic nature of the defendants' improper notarial practice, a

10   determination of the validity of all acknowledgments published by defendants affecting Plaintiff's

11   property, a determination of malice, a determination of restitution as appropriate and a determination

12   of the remedial measures necessary to correct the public land records public land records for all."

13   (FAC ¶174.)  Such determinations relate to practices and procedures utilized by Defendants, and do

14   not pertain to Moncrief's estate. They are therefore not the province of the bankruptcy court, and

15   Moncrief had to file this action separately.

16          Similarly, Estrella's separate actions are not amenable to being filed within the same case.

17   Estrella's state court action relates to the wrongful foreclosure of his residential property and pertains to

18   facts that are distinct to Estrella *vis a vis* the proposed class members of the instant action.  For instance,

19   Estrella's state court claim alleges that Defendants submitted inaccurate evidence in the form of a

20   recorded Assignment of Deed of Trust in the bankruptcy court. (Defendants' RJN Ex. J, ¶19.) The instant

21   claim is being brought as a putative class action, with Estrella as a proposed class representative.  The

22   distinct facts pertaining to the wrongful foreclosure of Estrella's property, specifically, do not facilitate

23   class action status under FRCP 23 in regard to, e.g., the requirement that the class representative's claims

24   be typical of the class, and that common questions or law or fact predominate.  The latter is particularly

25   true as the claims asserted in each case are wholly distinct: the state court claims regarding, *inter alia*,

26   wrongful foreclosure, intentional misrepresentation, conspiracy and interference with contractual

---

[30] *Geron v. Schulman (In re Manshul Constr. Corp.),* 225 B.R. 41, 45 (S.D.N.Y. 1998), citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995).

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1    relationship, pertain to *Estrella's* relationship with Defendants; the instant action pertains to the

2    procedures and illegal and systemic practices of Defendants, generally.  Although the former encompasses

3    facts set forth in the latter, the context of the facts is wholly distinct, as are the claims.  As stated, Estrella

4    has voluntarily dismissed his case pending the outcome of this matter.

5         *5) Plaintiff Carillo-Thomas's UCL Claim is Not Barred Under the Doctrine of Res Judicata.*

6         Defendants attempt to evade liability for their illegal behavior by asserting res judicata against

7    Carillo-Thomas.  As with Plaintiff Estrella's state court action, however, Carillo-Thomas's actions are

8    distinct and necessarily were brought as separate suits.

9         The doctrine of *res judicata* applies where: the issues in both proceedings are identical; the issue

10   in the prior proceeding was actually litigated and actually decided; the issue was essential to support a

11   valid and final judgment on the merits. (*Grieve v. Tamerin* 269 F3d 149, 153 (2nd Cir. 2001).)   The

12   issues in the two actions, while encompassing some overlapping facts, are separate and distinct.  As with

13   Estrella's actions, Carillo-Thomas's UCL action was based on fraudulent representations regarding

14   authority to foreclose, as well as unlawful foreclosure of Carillo-Thomas's property, specifically.

15   (Defendants' RJN, Exh. O, ¶¶162-177.)   The action before the court concerns Defendants' general

16   procedural practices relating to notarizations, in regard to all putative class members, which are defined

17   as "All California real property owners whose property is allegedly encumbered by a Deed of Trust

18   securing a Note in default owned or serviced by CHASE or its agents AND where CHASE or its agents

19   has caused any document to be recorded in the public land records after January 1, 2008 which required

20   an acknowledgment under California law" but excluding Defendants' and their agents.  (FAC ¶180.)

21        *6) Defendant NDeX's Joinder Does State Grounds Upon Which Dismissal is Appropriate*

22        Defendant NDeX's Notice of Joinder and Joinder ("Joinder") in Defendants JPMorgan Chase

23   Bank, N.A. and California Reconveyance Company's Motion to Dismiss attempts to set forth

24   additional grounds for dismissal of Plaintiffs' claims under 12(b)(1) and 12(b)(6).

25        The first ground set forth by NDeX is that played "a very limited role" in the activities set forth

26   in the FAC.  (Joinder 3:12-4:17.)  This, presumably, goes to whether a claim has been stated with

27   regard to NDeX. The assertion NDeX had a limited rule is an evidentiary matter, is therefore not

28

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1  admissible for consideration when determining a 12(b)(6) motion (see section II, above).[31] Defendant

2  NDeX also premises its joinder on arguments that a "defect in the assignment chain is not actionable

3  (Joinder 4:18-6:12), and that "any defects in the assignments were not prejudicial" (Joinder 6:13-7:5).

4  Neither of these actually addresses Plaintiffs' allegations regarding improper notarization and pollution

5  of public land records, and therefore has no bearing on the instant Motion.

6

7

8

9  ## IV. CONCLUSION

10  As state actors, California notaries play a crucial role in preserving the integrity and reliability

11  of real property transfers.  California statutes require strict adherence to Notary laws and professional

12  standards.  It is a crime to solicit, coerce and influence individuals to engage in improper notarial acts.

13  Inherent in the cost of engaging in a legitimate Default Loan Servicing business is the cost of proper

14  due diligence and strict compliance with California notary laws.  Not only have Defendants ignored

15  and violated California Notary Laws and professional standards, Defendants have implemented a

16  systemic business practice that institutionalizes illegal Notary "robo-signing".

17

18  The cost savings benefit of reducing the role of notaries to line workers in Defendants'

19  foreclosure factories cannot justified at the expense of the integrity of the public land record system.

20  To save a buck, Defendants have failed to strictly comply with California notary laws and have

21  influenced its agents to do the same.  Defendants' business model has resulted in the recording of tens

22  of thousands of improperly acknowledged notarized documents which now pollute the California

23  public land records.  Unless these documents are purged, Plaintiffs will continue to suffer, varying

24  economical, social and legal consequences.

25

26

27

28  [31] Within this argument, Defendant NDeX also asserts privilege under Civ. Cod. Section 47, which is addressed above.

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

1

2   Defendants' improper notarial practice business model is an assault on California law and property

3   rights, notwithstanding Defendants' potential right to enforce the terms of an individual Note and Deed

4   of Trust or to pursue *lawful non-judicial foreclosure*.

5

6   For all the foregoing reasons, Plaintiffs request that the Court deny Defendants' Motion to Dismiss.  In

7   the event the Court sustains Defendants' motion, Plaintiffs respectfully request leave to amend the

8   First Amended Complaint.

9

10

11   July 9, 2012

12

13   Dated:                                          LAW OFFICES OF J. ARTHUR ROBERTS

14

15

16                                          By: _____

17                                          JOSEPH ARTHUR ROBERTS, ESQ.
                                            Attorneys for Plaintiffs
18                                          and all others similarly situated

19

20

21

22

23

24

25

26

27

28

POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT**
BAKENIE V. JPMORGAN CHASE BANK, NA
Case No: **SACV12-0060 JVS (MLGx)**

     I am employed in the County of Orange, State of California.  I am over the age of 18 years.  My business address is: **3345 Newport Blvd, Suite 213, Newport Beach, CA 92663**

     On July 9, 2012 I served the foregoing document described as Plaintiff's PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT JPMORGAN CHASE BANK, N.A.'S AND DEFENDANT CALIFORNIA RECONVEYANCE COMPANYS NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT on the interested parties in this action.

X     by placing the original and/or true copy thereof enclosed in (a) sealed envelope(s), addressed as follows"

**SEE ATTACHED SERVICE LIST**

X     **BY REGULAR MAIL**: I deposited such envelope in the mail at 3345 Newport Blvd, Newport Beach, CA 92663.  The envelope was mailed with postage thereon fully prepaid.

     I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  It is deposited with the U.S. Postal Services on that same day in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

**BY THE ACT OF FILING OR SERVICE, THAT THE DOCUMENT WAS PRODICED ON PAPER PURCHASED AS RECYCLED.**

**BY FACSIMILE MACHINE**: I Tele-Faxed a copy of the original document to the above facsimile numbers.

**BY USPS OVERNIGHT MAIL:** I deposited such documents at the Overnight Express Mail located at 3345 Newport Blvd, Newport Beach, Ca 92663.  The envelope was deposited with delivery fees thereon fully prepaid.

**BY PERSONAL SERVICE**: I caused such envelope(s) to be delivered by hand to the above addressee(s).

Okay
X     (Federal) I declare than I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on July 9, 2012, at Newport Beach, Ca 92663

----------------------------------------------------Autumn Skerritt

- 1 -

**PROOF OF SERVICE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT**
BAKENIE V. JPMORGAN CHASE BANK, NA
Case No: **SACV12-0060 JVS (MLGx)**

Attorney for JPMorgan Chase Bank, N.A.
ZACHARY J. ALINDER, Esq.
PETER OBSTLER, Esq.
DAVID S. CANNON, Esq.
Bingham McCutchen
Three Embarcadero Center
San Francisco, CA 944111


Attorney for NDEX West, LLC
Lindsay K. King
BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP
20955 Pathfinder Road, Suite 300
Diamond Bar, CA 91765


Attorney for Cal-Western Reconveyance Corporation
Robin Prema Wright
Nicole K. Neff
WRIGHT FINLAY & ZAK, LLP
4665 MacArthur Court, Suite 280
Newport Beach, CA 92660

- 2 -